Argued and submitted January 24, affirmed July 22, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# JIMMIE DALE NORMAN,
*Appellant.*

## (90D-103487; CA A69344)

835 P2d 146

William B. Wyllie, Salem, argued the cause and filed the brief for appellant.

Yuanxing Chen, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Defendant appeals his conviction, in a stipulated facts trial, for driving under the influence of intoxicants (DUII). ORS 813.010. He contends that the trial court erred when it denied his motion to dismiss on the ground that the state had committed a discovery violation. He also contends that the court erred when it denied his motion to suppress the results of field sobriety and breath tests. We affirm.

On May 5, 1990, defendant's wife called 911. She told the operator that she had had an argument with defendant and that he had driven off with a gun. Oregon State Trooper Ogle testified[1] that the dispatcher instructed him "to go the Silverton area and assist the Marion County Sheriff's office regarding a subject in a [van who] was armed with a handgun, and it was regarding a domestic dispute." Ogle saw defendant driving his van about 50 yards from defendant's house. Defendant pulled into his driveway and parked. Ogle pulled in behind him without turning on his car's overhead lights. He testified that defendant got out and walked toward him. Defendant testified that he did not see any police cars before pulling into the driveway. He testified that he got out of the van, walked toward the Marion County Sheriff's deputies and said, "I suppose you fellows want to talk to me." We are bound by the trial court's finding that the initial encounter was actually with Ogle, because that finding is supported by evidence in the record.[2] *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

---

[1] Ogle, Deputy Sheriff Witherall, defendant and his wife testified at the hearing on defendant's motion to suppress.

[2] In its order denying defendant's motion to suppress, the court made these findings:

"Trooper Mike Ogle of the Oregon State Police responded to a domestic dispute at the defendant's residence. As Trooper Ogle arrived at the defendant's residence he observed the defendant driving his vehicle into his driveway. The Trooper pulled in behind the defendant's vehicle. The Trooper questioned the defendant about the domestic dispute and immediately observed that the defendant was unsteady on his feet and had an odor of alcohol on his breath. The Trooper began investigating the defendant for driving under the influence of intoxicants. The defendant was subsequently arrested and cited for Driving Under the Influence of Intoxicants."

Ogle testified:

"I noticed, as he was approaching, * * * that he did seem to be a little unsteady on his feet. As he came up within about three to five feet of me, and began talking to me, I noticed a strong odor of alcohol on his breath. At the time, I also noticed that his eyes were bloodshot and his face was flushed, and then he began asking me what I was there for."

After the deputies spoke with defendant about the "domestic dispute," Ogle gave defendant field sobriety tests, then arrested him for driving under the influence of intoxicants.

In his first assignment of error, defendant claims that the trial court erred when it refused to dismiss the charge as a sanction for a discovery violation that the state allegedly committed. On June 4, 1990, defendant's attorney requested:

"Copies of any verbatim or substantially verbatim statements of any potential witness or witnesses including the defendant, together with the addresses of such potential witness or witnesses [and any] tape recordings or other electronic recordings [thereof]."

On October 18, his lawyer wrote to the district attorney: "It appears that there is a dispatcher's tape concerning this case which has not been produced." On November 2, he wrote to the district attorney again. In that letter, he said, "I have * * * twice requested copies of the tape of the 911 call made by [defendant's] wife and of the county sheriff and state police dispatcher's [sic] tapes." Eventually, the district attorney advised defense counsel that the "tape" had been "recycled."[3]

ORS 135.815 provides, in part:

"[T]he district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"(1) The names and addresses of persons whom the district attorney intends to call as witnesses at any state of

---

[3] The record is inadequate to determine what tape was destroyed. The state's brief and the oral arguments that were made on defendant's motion to dismiss suggest that the only tape that ever existed was a recording of the 911 call by defendant's wife. As we said in *Morrow v. Maass*, 109 Or App 694, 820 P2d 1374 (1991), *rev den* 312 Or 676 (1992), the unsworn statements of counsel are not substitutes for evidence.

the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

Defendant's first discovery request did not specify whether he was requesting recorded conversations between his wife and the 911 dispatcher, between the dispatchers and the officers that were summoned or both. The letter on November 2 indicates that he was seeking both.

■ ORS 135.815(1) applies only to statements made by "persons whom the district attorney intends to call as witnesses." The state did not call defendant's wife or the dispatcher, and there is no evidence that the state intended to call either of them.[4] The 911 tape was not subject to discovery under 135.815(1).

■ The record does not reflect whether any conversations between the dispatchers and the officers were recorded. If they were, then the state's failure to produce them was a discovery violation. Defendant contends that the tapes would reveal that, when Ogle followed defendant into the driveway, he did not reasonably suspect that defendant had committed any offense.[5] Ogle's testimony is insufficient to establish that, when he followed defendant into his driveway, he reasonably suspected that defendant had committed any crime. Therefore, defendant could not possibly be prejudiced by the state's failure to produce tapes of the conversations between the dispatchers and the officers. Because defendant could not have been prejudiced, the discovery violation, if any, did not require any remedy. ORS 135.865; *State v. York*, 291 Or 535, 544, 632 P2d 1261 (1981); *State v. Johanesen*, 110 Or App 348, 351, 822 P2d 154 (1991).

■ Next, defendant argues that Ogle unlawfully stopped him in his driveway.[6] The court concluded that "the stop of defendant occurred after the preliminary questioning of the

---

[4] Defendant's wife did testify at the hearing on defendant's motion to suppress, but she was called as witness on his behalf.

[5] Ogle testified that he received the dispatcher's call at 8:32 p.m. An 8:30 memorandum by the dispatcher says, "[Defendant] has a .44 handgun and is en route to residence. No crime has been committed at this time."

[6] He argues that the officer lacked "probable cause" to stop him. The correct standard for reviewing the lawfulness of a stop is "reasonable suspicion." ORS 131.615(1); *State v. North*, 72 Or App 1, 6, 694 P2d 990, *rev den* 299 Or 154 (1985).

defendant." A stop occurs when there is "a temporary restraint of a person's liberty by a peace officer." ORS 131.605(5). The mere act of following defendant into the driveway did not constitute a stop. Ogle did not use his car's overhead lights. Defendant got out of his car, walked toward the officer and initiated a conversation with him. Ogle had not restrained defendant either by force or by a display of authority. *See State v. Johnson,* 105 Or App 587, 590, 805 P2d 747 (1991). The initial encounter was not a stop.

■ Even before defendant spoke to Ogle, his unsteady gait indicated that he was possibly intoxicated. When defendant approached Ogle, the officer smelled alcohol on his breath, saw that his eyes were bloodshot and saw that his face was flushed. Ogle observed those indicia of intoxication[7] before restraining defendant in any way. At that point, he reasonably suspected that defendant had been driving while intoxicated. He was authorized to stop defendant and administer field sobriety tests. He asked defendant to stay until the sheriff's deputy arrived. After the deputy arrived and talked to defendant about the "domestic dispute," Ogle gave defendant field sobriety tests. The trial court correctly denied his motion to suppress.

Affirmed.

---

[7] Indicia of intoxication include, but are not limited to:
- "(1)   Odor of the breath
- "(2)   Flushed appearance
- "(3)   Lack of muscular coordination
- "(4)   Speech difficulties
- "(5)   Disorderly or unusual conduct
- "(6)   Mental disturbance
- "(7)   Visual disorders
- "(8)   Sleepiness
- "(9)   Muscular tremors
- "(10)  Dizziness
- "(11)  Nausea."

*State v. Clark,* 286 Or 33, 39, 593 P2d 123 (1979) (citing American Medical Association, *Alcohol and the Impaired Driver* 143-44 (1970)).