Argued and submitted October 31, 1995, reversed and remanded for new trial
May 15, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS CHARLES LINDQUIST,
*Appellant.*

## (CF93-0748; CA A84235)

917 P2d 510

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals from his convictions for sexual abuse in the first degree. ORS 163.427. He assigns error to the trial court's preclusion of a defense witness whom defendant disclosed on the day of trial. We reverse.

In September 1993, the 11-year-old victim and her two siblings stayed overnight in the living room of defendant's trailer. The victim alleged that five or six times during the night defendant placed his hand inside her panties and touched her vagina. Defendant was indicted for five counts of sexual abuse in the first degree. ORS 163.427. On February 10, 1994, about three weeks before trial, defendant told his attorney that a friend of his was at his home that night, but that he was unsure of the friend's name or whether he could find him. Defendant had not mentioned his friend's presence to the deputy investigating the case. On March 2, the day of trial, defendant told his attorney that the night before he had located his friend, Enoch Bass. Bass showed up at court about 9 a.m. This was the first time defense counsel met the witness, and he immediately notified the prosecutor, who interviewed Bass. As an offer of proof, Bass testified that he was in defendant's living room from about 12:30 to 5:30 a.m. the night in question.

"I * * * had a nephew of mine take me over there from Hermiston. Me and [defendant] sat there and played a new Nintendo game he just got. I left about 5:00, 5:30 that morning. I was there for at least five or six hours playing Nintendo with him."

Bass testified that he had spent the entire time in defendant's living room, where the victim was sleeping, and never saw defendant touch her. The trial court ruled that defendant violated the discovery statutes and excluded Bass's testimony. A jury found defendant guilty of all five counts, and he appeals.

A defendant's discovery obligations are governed by ORS 135.835, which provides, in part:

"[T]he defendant shall disclose to the district attorney the following material and information within the possession or control of the defendant:

"(1)   The names and addresses of persons, including the defendant, whom the defendant intends to call as witnesses at the trial, together with relevant written or recorded statements or memoranda of any oral statements of such persons other than the defendant."

ORS 135.845 provides, in part:

"(1)   The obligations to disclose shall be performed as soon as practicable following the filing of an indictment or information in the circuit court[.]"

■      The statutory duty to disclose witnesses applies to defendant personally, as well as his attorney. *State v. Ben*, 310 Or 309, 315, 798 P2d 650 (1990). The trial court here ruled that defendant personally breached his discovery obligations by failing to make information available to his attorney until the day of trial. As part of his ruling, the trial court stated:

"[I]n fundamental fairness to the state, [defendant is] claiming something that is totally unknown to the state of Oregon and they're entitled to investigate the matter.

"They didn't get to do so because *your client didn't make information available to you*. As a gentleman and officer of the court, you would have made that information available to [the prosecutor]. That would make the discovery statutes meaningless. It just abrogates the whole thing to allow somebody to come in here after the trial is scheduled to start and say, *We've got a witness that we know about all along*. I'll not allow him to testify." (Emphasis supplied.)

■      On appeal, defendant argues that he did not violate the discovery statutes because he could not locate Bass until the day before trial. The trial court, however, apparently did not believe that defendant was unaware of Bass's name or location and instead found that defendant had intended "all along" to call Bass as a witness.

■      Defendant's knowledge and intent are questions of fact. In reviewing discovery rulings, we are bound by the trial court's factual findings, if supported by evidence in the record. *State v. Brown*, 310 Or 347, 366, 800 P2d 259 (1990); *State v. Addicks*, 34 Or App 557, 560, 579 P2d 289, *rev den* 284 Or 80a (1978) (citing *Ball v. Gladden*, 250 Or 485, 487,

443 P2d 621 (1968)). When findings are not made, and the evidence is such that the facts could be decided more than one way, we conclude that the facts were decided in a manner consistent with the court's ultimate conclusion. *Ball*, 250 Or at 487.

Bass's presence in defendant's home from approximately midnight until dawn, during which he played video games with defendant, is evidence supporting the trial court's belief that defendant and Bass were prior acquaintances who knew each other well enough for defendant to have known Bass's name and address. From defendant's conversation with his attorney about Bass on February 10, the trial court could have concluded that defendant intended to call Bass as a witness at least as early as three weeks before trial. Because the record supports these factual determinations, we are bound by them.

■■ However, whether those facts add up to a violation of the discovery statutes is a question of law. *State v. Cervantes*, 130 Or App 147, 152, 881 P2d 151 (1994); *Addicks*, 34 Or App at 560. In *Ben*, the Supreme Court held that the defendant himself breached his discovery obligations by failing to disclose witness' names until the morning of trial, where the record indicated that he intended to call at least one witness as early as a few days after the incident. 310 Or at 315. Likewise, we conclude that defendant's failure to disclose Bass until the day of trial, when the record indicates that he intended to call him as a witness as early as three weeks before, constitutes a violation of ORS 135.835 and 135.845. The trial court did not err in finding that defendant breached his duty to disclose.

■■ We next address whether excluding Bass's testimony was the proper sanction. ORS 135.865 provides:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

We review the trial court's choice of sanction under ORS 135.865 for abuse of discretion. *State v. Gray*, 101 Or App 421, 424, 790 P2d 1203, *rev den* 310 Or 205 (1990); *State v. Hervey*, 70 Or App 547, 550, 689 P2d 1322 (1984).

Preclusion of a witness is a proper sanction only when the other party has been prejudiced and preclusion would serve the purpose of the discovery statutes. *Ben*, 310 Or at 316-17; *State v. Mai*, 294 Or 269, 277, 656 P2d 315 (1982).

> " 'In order to achieve the purpose of ORS 135.805 to ORS 135.873 to assure both parties the opportunity in advance of trial to prepare and to prevent unnecessary delays in trials without violating the constitutional right of a defendant to present witnesses, a trial court must apprise itself of the benefits and detriments of a particular alternative.' " *State v. Girard*, 106 Or App 463, 469, 808 P2d 1017 (1991) (quoting *State v. Gill*, 96 Or App 358, 361, 772 P2d 957 (1989)).

As a prerequisite to precluding a witness, the trial court must find (1) actual prejudice to the other party and (2) that "no other sanction short of exclusion would remedy" that prejudice. *State v. Johanesen*, 110 Or App 348, 351, 822 P2d 154 (1991); *see also Ben*, 310 Or at 318 (trial court must find that lesser sanction would not avoid prejudice); *Girard*, 106 Or App at 470 (same). Failure to consider alternatives short of preclusion warrants reversal. *Ben*, 310 Or at 318-19; *Johanesen*, 110 Or App at 351-52; *Girard*, 106 Or App at 470; *Gill*, 96 Or App at 361-62.

In *Johanesen*, the trial court did not "meaningfully consider the benefits and detriments of sanctions or remedies short of exclusion" because it never determined "what additional time the state would need to prepare its challenge to the defense evidence." 110 Or App at 351. In *Gill*, the trial court erred by failing to consider whether an interview, a brief recess in trial or a postponement would remedy the prejudice caused by the defendant's untimely disclosure of his witness. 96 Or App at 361.

The trial court here concluded that a brief recess to allow the state to interview Bass would not cure the prejudice because the state needed to investigate whether Bass was actually present at defendant's home the night in question.

However, as in *Johanesen*, the court never considered how much time the state needed to investigate Bass's story, nor, as in *Gill*, whether a continuance or postponement to allow investigation would suffice. Even assuming that defendant's untimely disclosure prejudiced the state, the trial court abused its discretion by not fully exploring sanctions short of preclusion.

■■ ■■ The state, however, contends that any error in precluding Bass was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution,[1] we must affirm a defendant's conviction, despite the trial court's error,

> "whenever there is (1) substantial and convincing evidence of guilt and (2) little, if any, likelihood that the error affected the verdict." *State v. Parker*, 317 Or 225, 233, 855 P2d 636 (1993).

In *State v. Perez*, 135 Or App 433, 436-37, 899 P2d 722 (1995), we refused to find harmless error in the improper exclusion of two defense witnesses from a burglary-rape trial because "[t]here was no physical evidence; the case boils down to a swearing match between defendant" and the victim. 135 Or App at 437. Because the defendant's witnesses directly contradicted the victim on an element of the burglary charge and impeached her on a noncollateral matter, we could not say there was "little likelihood" that the error affected the verdict. *Id.*

Here, as in *Perez*, the state offered no physical evidence and no other witnesses to the alleged abuse, and the case essentially came down to a "swearing match" between defendant and the victim. Bass's testimony, if believed, was probative of whether defendant touched the victim at all. The state contends that the jury would not have believed Bass because of doubts about his credibility.[2] Those doubts, however, are not so extreme that we can say there is "little likelihood" the jury would have believed his testimony, or at least

---

[1] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion * * * that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

[2] The state asserts that Bass's testimony was not credible because: it was implausible that, six months after the fact, Bass remembered the exact date he was·

that it might have created reasonable doubt in the minds of the jury.

The state also contends that Bass can only vouch for defendant's actions for a five- to six-hour period between midnight and dawn, which does not cover the entire "overnight" stay during which the victim alleges she was abused. Even if the jury believed Bass, the state argues, his testimony does not contradict the victim's story because the assaults could have occurred before or after his visit.

However, simply because Bass's testimony does not counter the victim's story in every respect does not mean his improper preclusion was harmless. It is the state's burden to prove the allegations of the indictment; it is not defendant's burden to disprove them. Bass's testimony covers a significant portion of that night. The jury could have accepted it as raising reasonable doubt as to whether defendant touched the victim at all. Therefore, we cannot say there was "little likelihood" that the exclusion of Bass's testimony affected the verdict.

Accordingly, we reverse defendant's convictions.[3] On remand, the state will have adequate time to prepare a challenge to Bass's testimony, and the trial court need not consider alternate sanctions. *Johanesen*, 110 Or App at 352.

Reversed and remanded for new trial.

---

at defendant's home; Bass admitted drinking the morning of trial and contradicted himself on cross-examination as to the amount he had drunk; defendant never mentioned Bass's presence to the investigating deputy; and the victim testified that no other adults had been present that night.

[3] We do not reach defendant's assignment of error related to sentencing.