Argued and submitted June 27, 1996, convictions affirmed; remanded for resentencing April 30, petition for review denied July 15, 1997 (325 Or 491)

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS EUGENE MOSS,
*Appellant.*

(94C21010; CA A87648)

938 P2d 215

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals convictions on charges of rape in the first degree, ORS 163.375, and unlawful sexual penetration in the first degree, ORS 163.411, contending that the trial court committed three evidentiary errors and one sentencing error, each of which he argues requires reversal. We affirm the convictions and remand for resentencing.

Defendant was charged with committing rape and unlawful sexual penetration against a minor child and with committing unlawful sexual penetration against the child's younger sister. Defendant did not deny that the children had been abused but argued instead that he was not the perpetrator of the abuse. According to defendant, the children had misidentified him as their abuser. Before trial, the prosecutor had requested witness lists and other discovery from defendant on two occasions, to which defendant responded that he had none. At the beginning of trial, the prosecutor again asked for discovery information but was informed that defendant intended to offer impeachment witnesses only. Linda McCarthy was listed as a defense witness, but defendant provided no notes or other discovery concerning her testimony.

At trial, defendant cross-examined the younger child and asked whether she had discussed the alleged abuse with another individual, McCarthy, and attempted to elicit from the child testimony that she had told McCarthy a different version of her recollections of the abuse from what she had just explained on the witness stand. The state objected on the ground that defendant was apparently cross-examining on the basis of information that had not been disclosed during discovery. Defendant acknowledged the existence of some six pages of notes and the fact that they were not disclosed as requested. The state moved to exclude the testimony of McCarthy on the ground that defendant had committed a "flat out, blatant violation" of discovery rules. The trial court agreed that, "from the statute and on the cases * * * this is a discovery violation." The court then turned to the question of identifying an appropriate remedy for the violation. Defendant submitted an offer of proof, which, in brief, amounted to a representation that McCarthy would testify that the child

said nothing to her about defendant having committed the abuse and, in fact, described an individual other than defendant as her assailant. The trial court concluded that the discovery violation had caused actual prejudice to the state:

"And it appears to me that had the discovery been given in a timely fashion, as the statute requires, there are a number of things that the State would have been able to do differently, including discovering the nature of the interview process between Linda McCarthy and [the child], to determine if it was any suggestibility on their [part], to discuss it with [the child] to see if she recalls having that conversation. And to do it in a way that isn't, one, in front of the jury, and to do it in a way that isn't confined to the rules of evidence in a manner in which one has to question the witness in the courtroom.

"We all, as having practiced in the criminal area for a number of years, know that with child victims, because of their age and the circumstances, that their responses to questions are very dependent upon the nature of the question and how it's put to them. You ask a very specific question of a child and they may answer in a way that you think is inconsistent, but is not inconsistent in their minds because you've asked the question wrong. And it's difficult to know how to deal with evidence if you don't have access to it. The problem that we have here is even if yesterday morning when we were getting ready to pick a jury, first off if [the prosecutor] had that, he would have had a viable request for a continuance had he chosen to do that. He does not have that option at this point, the jury is sworn, jeopardy is attached. So he cannot ask, quote, for this jury to be discharged and to come back at some later point. He could have done that before jury selection and jury swearing had happened. So that's one option that is no longer available to him through no fault of his own. He asked for discovery and it was denied him.

"The other thing is that he might have, he would have had time to talk to his witnesses before they testified. Talked to them about this particular evidence to see whether or not it was something that, because of the manner in which the questions were put to people, whether or not it's consistent or inconsistent. But he wasn't awarded that opportunity through no fault of his own.

"I believe that if this had been provided to him yesterday morning, despite the fact that I would expect the District Attorney to ask for the evidence to be excluded, even before the jury had been sworn, I would have been saying no (inaudible) I will not receive that, even though it was not timely. So if there were other sanctions available yesterday. At this point, I don't think there are any other sanctions available.

"I struggled with this a lot. You can probably tell that by the amount of continuances we've had and even thinking about it over the noon hour, and (inaudible) research, and I've done that myself. I know it's a harsh remedy but the purposes of the discovery statutes are for people to disclose certain things and comply with the statutes so that the other party is not prejudiced. And it isn't just a one way street.

"I don't believe that a continuance in this case is going to cure the prejudice because we already have the witnesses having testified. Their testimony is on the record and the jury has heard this testimony without the District Attorney having any ability to ameliorate that fact. But at this stage in the game I can't see another option other than to exclude the testimony, and likewise the impeachment of the witnesses, so that would make a two part process.

"* * * * *

"We have had an opportunity to hear what the testimony of Linda McCarthy would be, so giving you an opportunity to talk with her further I don't view that as being the key issue at this point. We know what her testimony would be and so I don't see that that is a viable option because of where we are in the trial, because we are halfway through the trial. And because those witnesses have already testified, including one of the children. The only child that she's going to be able to impeach, as near as I can see. So the child that she is here to impeach has already testified and so the damage has already been done.

"To grant a continuance at this point appears to me not to be, first off, clearly it's not in the best interest of the child witness. * * * But we're back in the same position, which is that the problem occurred because three witnesses were allowed to testify pursuant to what it was believed the discovery, that the available material, consistent with the available material, and that was not true."

The trial court then concluded that McCarthy's testimony would be excluded.

Defendant's first assignment of error is that the trial court erred in excluding McCarthy's testimony. According to defendant, there was no violation of the rules and, in any event, the sanction of exclusion was inappropriate.

Whether there is a discovery violation is a question of law. *State v. Lindquist*, 141 Or App 84, 88, 917 P2d 510 (1996). ORS 135.835(1) requires a defendant to disclose "relevant written or recorded statements or memoranda of any oral statements" of individuals the defendant intends to call as a witness at trial. ORS 135.845 requires all such disclosures to occur "as soon as practicable." In this case, the trial court found, and no one contests, that defendant had notes concerning McCarthy's testimony, which defendant did not disclose to the state at the beginning of trial. We conclude that the trial court correctly determined that defendant violated the discovery statute.

We review the trial court's sanction for discovery violations for abuse of discretion. *State v. Gray*, 101 Or App 421, 424, 790 P2d 1203, *rev den* 310 Or 205 (1990). Nevertheless, certain findings are required as a matter of law to justify exclusion of a witness, namely (1) that the party requesting exclusion has suffered actual prejudice from the violation and (2) that no other sanction short of exclusion would remedy that prejudice. *Lindquist*, 141 Or App at 89. In this case, the trial court considered at length and identified expressly the actual prejudice to the state that resulted from defendant's discovery violation. The court also, again expressly and in detail, considered alternatives to exclusion and concluded for reasons stated that the sanction of exclusion was the only meaningful sanction available on the facts of this case. Under the circumstances, we find no abuse of discretion and reject defendant's first assignment.

The state also called Detective Mason to testify concerning an interview of defendant that he had conducted before trial. The prosecutor elicited the following testimony concerning Mason's own prior statement to defendant that he did not believe defendant's story:

"I advised him [defendant] that I had not—I did not believe him, and then went into a—some statements regarding the situation that I felt that he hadn't been truthful and I felt the reason that he hadn't been maybe was he was scared or whatever. And this went on for several minutes. And generally speaking, when I confront someone I will get a denial and there was no denial. And the denial finally came, like I said, several minutes later, and his only statement at that point was I didn't touch her. I then continued on and with basically the same statements and it appeared to me that there [was] watering occurring in his eyes and it looked like he was about to cry, and he stated to me you want me to confess, don't you. My response to that was I want you to tell me the truth about this. And basically at that point the interview ended."

There was no objection to the foregoing testimony. Instead, defendant cross-examined Mason as follows:

"[DEFENSE COUNSEL]: You've interviewed probably thousands of people in your career, haven't you?

"[OFFICER MASON]: Yes.

"[DEFENSE COUNSEL]: Wouldn't you agree with me this is a very serious charge?

"[OFFICER MASON]: Yes.

"[DEFENSE COUNSEL]: It isn't unusual for people to get emotional, watery eyed when you're accused of a major crime, is it?

"[OFFICER MASON]: Yes it is.

"[DEFENSE COUNSEL]: You're telling me it never happened before?

"[OFFICER MASON]: No, that's not what I'm saying. There's circumstances where a person that when is confronted, in my experience, with a serious offense, if I'm accusatory to them and they didn't do it, they're right in my face telling me I'm wrong, I don't know what I'm doing, that I'm very wrong. They didn't do it. And because they are not about ready to accept the fact that they committed or are being accused of a crime they didn't commit. Whereas in my experience again, someone that is very weak in denial and or no denial at all, and becomes teary eyed, often is dealing with some emotions, and in my opinion, guilt.

"[DEFENSE COUNSEL]:   Well, Your Honor, I'm going to ask that answer be stricken. It was not in response to a question, it's just a self-serving opinion by the officer and isn't really admissible, and ask [that] the jury be instructed not to consider that statement."

The trial court denied the motion to strike.

Defendant assigns error to the denial of his motion. He contends that Mason's answers to defendant's questions at trial were unresponsive and constituted improper commentary on the credibility of a witness. At the outset, we note that defendant's objection at trial did not mention impermissible commentary on the credibility of a witness as a ground for striking Mason's answer. The trial court thus had no opportunity to consider the matter, and we will not address it for the first time on appeal. *See State v. Howell*, 56 Or App 6, 10, 641 P2d 37 (1982) ("we review only those grounds urged in support of the objection when made"). As for the contention that Mason's answer was unresponsive, we review the trial court's denial of a motion to strike to determine whether there was an abuse of discretion. *Barrett v. Landis*, 281 Or 433, 436, 575 P2d 154 (1978). In this case, Mason's answer to defendant's question was directly responsive. After being asked whether it was unusual for people to get watery eyes when accused of a crime, Mason testified "yes." Defendant then pursued with the open-ended follow-up question, "You're telling me it never happened before?" And Mason explained that what he meant was that, in his experience, it is unusual for wrongly accused people to cry, but not those dealing with guilt. Defendant received no more than an answer to the question he posed. We reject the assignment of error.

At the close of evidence, the trial court ordered the trial to resume five days later. At the resumption of trial, shortly before oral argument was to begin, defendant moved the court to reopen the record to take the testimony of an additional witness, Michael Ray Smith, who, defendant reported, would testify that he saw a man other than defendant with the children and that that man was on parole as a sex offender. The trial court denied the motion, reasoning that the state would be unduly prejudiced by an inability to

investigate Smith and that testimony, such as his prior criminal history, would be of questionable admissibility, and that other testimony would be cumulative of evidence already in the record. Defendant assigns error to the court's refusal to reopen the case, a decision that we review for abuse of discretion. *State ex rel Juv. Dept. v. Charles,* 123 Or App 229, 236, 859 P2d 1162 (1993), *rev den* 318 Or 326 (1994). On the record before us, and given the reasons identified by the trial court, we find no abuse of discretion.

■ Defendant ultimately was convicted of one count of rape in the first degree and two counts of unlawful sexual penetration in the first degree. The trial court first sentenced defendant on the rape conviction. Then, in sentencing him on the penetration convictions, the court treated the rape conviction as a "prior conviction" for a felony and, on that ground, applied the determinate sentencing provisions of ORS 137.635, which apply when a defendant who has been convicted of one of a list of felonies—including unlawful sexual penetration and first degree rape—"has previously been convicted" of one of the listed felonies. Defendant's final assignment of error is that the trial court could not lawfully consider the rape conviction a prior conviction for purposes of applying ORS 137.635, because the conviction had not occurred before the commission of the other crimes. In *State v. Allison,* 143 Or App 241, 256, 923 P2d 1224, *rev den* 324 Or 487 (1996), we held that, for ORS 137.635 to apply, a defendant must have been convicted of one of the listed felonies before the commission of the crimes for which the defendant is about to be sentenced. The trial court therefore erred in applying the statute to this case.

Convictions affirmed; remanded for resentencing.