Argued and submitted November 18, 1996; resubmitted In Banc January 13, reversed and remanded February 25, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# CLAUDIA DIVITO,
*Respondent.*

## (TC95-12218; CA A90618)

955 P2d 327

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John Henry Hingson III argued the cause and filed the brief for respondent.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Defendant is charged with driving while under the influence of intoxicants (DUII) under ORS 813.010. The state appeals a pretrial ruling that excluded testimony by a state witness, as a sanction for a purported discovery violation. We reverse and remand.

This prosecution arose out of an automobile accident. Defendant's theory of the case is that she was not the driver of the car that was involved in the accident. On the morning of trial, the prosecutor told the court in a pretrial hearing that, in preparing for trial the night before, she had discovered new evidence in the case. She related that she had wondered why there was nothing in the police reports regarding any contact with 9-1-1 about the accident. She telephoned 9-1-1 and reached a supervisor, who was able to retrieve a call on his computer screen that had been made on the night of the accident. He faxed that information to her. Using that information, she contacted Kevin Dean. Dean told her that he had heard an excited utterance from an unknown declarant who came into the store where Dean was working. The declarant said that he had almost been hit by a woman on the road, and he pointed to defendant's car off the side of the road about 200 yards away. Based on the conversation with Dean, the prosecutor decided to subpoena him to testify about the utterance.

Dean was served with a subpoena later that night, and the officer who served the subpoena obtained another statement from him that was essentially the same as the one he had given to the prosecutor over the telephone. When the prosecutor learned that the subpoena had been served, she called defendant's attorney's office and left a message informing him of her intention to call Dean as a witness during the trial. The next morning, the scheduled beginning of trial, she delivered a copy of the statements that Dean had given to defendant's attorney.

■ After the matter was explained by the prosecutor to the trial court, defense counsel argued that the state had committed a discovery violation. He said, in part:

"To say this is a surprise, blockbuster, startling witness, is probably to engage in understatement. * * * Here, this is a witness whose identity has not been provided to us as required under the statute, ORS 135.845. * * * As soon as practical, the state had the obligation to disclose the identity of this witness, as well as his address, together with any written or recorded statements that he may have made. I was handed this morning a document that I have never seen before to my knowledge. * * * None of that is in the discovery material provided to me by the state."

As it turned out, Moore, a police officer, had spoken to Dean on the night of the accident and Dean had also told him about the declarant. Moore made notes regarding the utterance, but that information was not included in any police report that had been given to the district attorney's office. Moore's observations about the accident were included in another officer's report that had been forwarded to the district attorney's office. Before trial, the state had given proper notice of its intention to call Moore as a witness. However, the prosecutor had not intended to offer any evidence about the excited utterance, because at that time, she was unaware of Dean's existence. Nonetheless, the police report of the other officer furnished to defendant as part of the pretrial discovery contained information about Moore's investigation, including his contact with an unidentified store clerk who turned out to be Dean. However, the report did not mention Dean's name or what he had told Moore. Defendant argued that a discovery violation had occurred under ORS 135.815(1) because the state had not furnished the information about the excited utterance earlier and because the information in Moore's notes was imputable to the district attorney's office.[1] She contended that a proper sanction would be to exclude Dean's testimony about the utterance as the result of the purported violation.

The trial court ruled that the failure of the state to provide the defense with the information in Moore's notes amounted to a discovery violation, and it ordered that Dean's

---

[1] Statements and memoranda of witnesses in the possession of the police are subject to ORS 135.815, even though they are not given to the prosecutor. *State v. Warren,* 304 Or 428, 433, 746 P2d 711 (1987).

testimony be excluded as a sanction for the violation.[2] The state assigns error to the trial court's ruling and argues that no discovery violation occurred.

■ Pretrial discovery in criminal matters is governed by statute.[3] ORS 135.815(1) provides that the district attorney shall disclose

"[t]he names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the

---

[2] In response to defendant's motion, the court made the following findings and rulings regarding whether there had been a discovery violation and what was an appropriate sanction:

"1) The District Attorney's Office, in and of itself, did everything they could do, in a timely fashion, once they were aware of this information.

"2) The problem, I find, is one created by the police officers in the beginning. The D.A.'s Office is in the position of having to deal with what they get, and not to create that which the investigating officers didn't complete.

"3) The police are indeed, a branch of the State, and to that extent have some obligations in the discovery area similar to that which the State has.

"4) There is no mention of any kind, in any report made available to the defense, that anybody talked to, identified or discovered, this critical witness * * *. The evidence is that [Dean] was visited by some police officer who took notes that night. So his identity and the information he had to offer, was known to the State on the night of the event.

"5) Then, from my reading of the police reports, while it's not crystal clear in there that there's a dispatch call * * *. There is some indication in there that there was a dispatch call and the 9-1-1 tape is available to anybody * * *. So, the fact that there was a [witness] * * * could have been discovered by the defense as well.

"6) What could never have been discovered by the defense, without the police officer writing the proper report, is what [Dean] was going to say. And it's pretty easy to find prejudice here, because [Dean is] going to say some pretty damaging things to the defense based upon these excited utterances that are going to come in.

"7) So, I find, first, a discovery violation, not the D.A.'s Office, but certainly through the police, who neglected to write a pretty critical piece of information up.

"8) I find that clearly there is prejudice to the defense, if [Dean] testifies.

"* * * I think that if we are ever to get the reporting officers to do the job that the statute requires them to do, so that the State can do the job that they're required to do, it is not to set it over to fix it. So, I believe that based upon what I read in [the case law], the appropriate result here is not to allow [Dean] to testify in this case. He was clearly known, and the content of his testimony was clearly known, and it was not disclosed to the defense's prejudice."

[3] Defendant did not contend that the state violated his constitutional rights when it failed to produce Moore's notes. Accordingly, we confine our discussion to the statutory basis for pretrial discovery.

trial, together with their relevant written or recorded statements or memoranda of any oral statement of such persons."

The statutory duty of the district attorney to disclose a witness' pretrial statements is triggered by the prosecutor's intention to call that person as a witness. *State v. Norman*, 114 Or App 395, 835 P2d 146 (1992).[4] Once triggered, the scope of discovery under the statute is limited to that witness' "relevant written or recorded statements or memoranda of any oral statements of such persons."

■■    Defendant argues that the trial court's ruling was correct. Defendant asserts, "[b]ecause the notes taken by Sr. Trooper Moore contained 'factual information,' they constituted a 'statement' of the witness and should have been disclosed to the defense." Contrary to defendant's assertion and the trial court's ruling, the duty to disclose under ORS 135.815(1) does not require the police to compile all inculpatory information in their possession in a police report and deliver it to the defense. *See State v. Burdge*, 295 Or 1, 7 n 5, 664 P2d 1076 (1983). Rather, the focus is on whether "the matter" that the defendant seeks to discover is a *"relevant* written * * * *statement"* (emphasis supplied) of the witness that the state intends to call.

"In short, matters which are 'statements' within the meaning of the discovery statute may present both a statutory issue (if destroyed or otherwise not disclosed) and a constitutional issue (if exculpatory). Matters which are not 'statements' within the meaning of the discovery statute, such as rough notes and preliminary drafts, can present only a constitutional issue." *State v. Morrison*, 33 Or App 9, 17, 575 P2d 988 (1978).

In this case, Moore is the witness that the state intended to call, and the matter that defendant claims that the state was required to produce is his notes (his purported

---

[4] In *Norman*, the defendant contended that the state's inability to furnish a copy of the 9-1-1 tape containing the voices of the defendant's wife and the dispatcher was a violation of that statute. We held that because the state did not intend to call the defendant's wife or a 9-1-1 dispatcher as a witness, the trial court did not err when it denied the defendant's motion to dismiss the charge against him because of a purported discovery violation under ORS 135.815(1). 114 Or App at 399.

statement). Thus, as framed by the facts, the issue is narrow. Was the state required by ORS 135.815(1) to furnish Moore's notes about the identity of Dean and the excited utterance at a time when the state did not intend to call Dean as a witness or offer that evidence through Moore?[5] The answer depends on what the legislature meant when it provided for the discovery of "relevant statements." One possible interpretation of the word "relevant" in the statute is that the statute contemplates discovery of all such statements of a witness that are generally relevant to any issue in the case. Another possible construction of the statute is that the legislature intended that the word "relevant" apply to those statements that are relevant *to the testimony of the witness* whom the state intends to call.

We consider first the text of the statute and note that it ties discovery of "relevant" statements to individuals that the state intends to call as witnesses. As we have said, the statute does not compel discovery of relevant statements of nonwitnesses. Here, the state did intend to call Moore to testify about his observations when he arrived at the scene of the accident. However, it is also uncontroverted that the state did not intend to offer any evidence through Moore about his contact with Dean or evidence of the excited utterance at the time that it furnished the information about Moore's investigation of the accident to defendant. It was only after the prosecutor learned of Dean's existence through the inquiry to 9-1-1 that the state decided to call *Dean* as a witness. Thus, the notes concerning Dean did not become relevant to any witness' testimony until Dean became a witness.[6] Nonetheless, the report about the excited utterance in

---

[5] ORS 135.845(2) provides:

"If, after complying with the provisions of ORS 135.805 to 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information."

The trial court found that once the state notified defendant of its intent to call Dean as a witness, "the District Attorney's Office, in and of itself, did everything they could do, in a timely fashion, once they were aware of this information."

[6] Any testimony elicited from Moore about the contents of Dean's statement to him or the excited utterance would have been subject to a valid hearsay objection if offered to prove that defendant was the driver of the vehicle.

the notes is information that could have led to evidence relevant to the case in general, and it is that aspect of the case that gives rise to a competing argument that discovery of the notes is contemplated by the statute. We turn to the context of the statute. ORS 135.815(1) is part of a statutory scheme that provides for pretrial reciprocal discovery in criminal cases. Defendants are under an almost identical burden to furnish discovery to the prosecution. ORS 135.835 provides, in part, that

> "the defendant shall disclose to the district attorney the following material and information within the possession or control of the defendant:
>
> "(1)  The names and addresses of persons including the defendant, whom the defendant intends to call as witnesses at the trial, together with *relevant* written or recorded statements or memoranda of any oral statement of such person other than the defendant." (Emphasis supplied.)

In context, "relevant" has the same meaning in ORS 135.815(1) as it does in ORS 135.835(1) and applies equally to defendants as well as to the state. If the two statutes are interpreted to require the parties to furnish discovery of all statements relevant to the case in general, then that interpretation raises the prospect that material that could assist in the conviction of a defendant will have to be furnished to the state when a defense investigator is called to testify by the defense (even though the material is unrelated to the investigator's testimony). On the other hand, if the statute is interpreted to mean that "discoverable material" must be relevant to the witness' testimony, then the defense is protected from having to disclose unfavorable evidence that helps the prosecution make its case. Of course, once a party decides to offer evidence through a witness, it opens the door to the admission of other evidence that is relevant to rebut or impeach that evidence, and the discovery statutes obviously contemplate discovery under those circumstances.

■      Additionally, when ORS 135.815(1) and ORS 135.835(1) are considered in context with the other provisions in ORS 135.805 *et seq*, it becomes clear that the legislature intended that the word "relevant" in subsections (1) pertain to the *testimony* of the specific witnesses that the

party intends to call, rather than to general relevance of evidence to the case. ORS 135.815(3) provides discovery of

> "any trial reports or statements of experts made in connection with the particular case, including results of physical or mental experimentations and of scientific tests *which the district attorney intends to offer in evidence at the trial*." (Emphasis supplied.)

ORS 135.835(2) furnishes discovery to the state of

> "any reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons, *which the defendant intends to offer at trial*." (Emphasis supplied.)

ORS 135.815(4) requires the state to provide discovery of any books, papers documents, photographs or tangible objects "which the district attorney intends to offer in evidence at trial."

Also, ORS 135.855(1) exempts "work product, legal research, records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions * * * of police officers * * * in connection with the investigation, prosecution or defense of a criminal action." ORS 135.855(2) adds,

> "When some parts of certain material are discoverable under ORS 135.805 to 135.873, and other parts not discoverable, as much of the material shall be disclosed as is consistent with the provisions thereof."

Nothing in the above statutes requires the state or the defense to provide the discovery of inculpatory evidence that it does not intend to offer at trial, even though the evidence could be relevant to the issues in the case. When the text of ORS 135.815(1) is considered in context with the other statutes that are part of the statutory scheme for discovery, the term "relevant statements" takes on additional meaning, because the common thread throughout the statutes is discovery of information that is relevant to a particular witness' testimony.

■ Our case law interpreting the statute and its underlying history confirms what the text and the context of ORS

135.815(1) suggests. At issue in *Morrison* was the discovery of notes made by a police informant concerning a drug transaction. When the district attorney requested his "notes" concerning the transaction, the informant used the notes to prepare a letter that contained an account of the transaction with the defendant. We held that the state was not required to produce the informant's notes because they were not "statements" within the meaning of ORS 135.815(1). We said,

> *"The rationale for the distinction between notes which are not 'statements' and a final report which is a 'statement' lies in the purpose for making pretrial statements available for pretrial discovery so that they will be available upon cross-examination for possible impeachment by prior inconsistent statement.* Unlike other things subject to discovery under ORS 135.815 such as photographs and tangible objects, pretrial statements cannot generally be used as substantive evidence, but only for impeachment. To be a statement that can be used for impeachment, there must have been some intent to communicate information to another. * * * Generally notes and rough drafts are not such statements. Specifically, in this case, [the informant's] original writing was never communicated to another. *The meaning of 'statements' should be limited to matters which can, in fact, be used for impeachment."* *Morrison,* 35 Or App at 15-16 (emphasis supplied).[7]

_____

[7] Lest there be any doubt, the legislative history makes it clear that the *Morrison* rule is exactly what the legislature intended when it enacted ORS 135.815(1). Then Solicitor General John Osburn participated in the drafting of what has become ORS 135.815(1). *State v. Dyson,* 292 Or 26, 34, 636 P2d 961 (1981). As he explained to the Oregon Criminal Law Revision Commission:

> "The third major area of discovery in Oregon criminal cases involved *cross-examination* and arose from the case of *State v. Foster,* 242 Or 101, 407 P2d 901 (1965), where a prosecution witness was called to testify. The court held that if he had made prior statements which had been recorded or reported in any way, the defense was entitled to see those written statements prior to beginning cross examination so they could cross examine the witness on his prior statements. However, prior written statements were not at the present time required to be disclosed pretrial.

> "* * * * *

> "Section 2. *Disclosure to defendant.* Mr. Osburn explained that the provisions of section 2 were essentially taken from the ABA Standards.

> "Subsection (1). Subsection (1), he said, included relevant written or recorded statements made by witnesses and would make available to the defense reported statements *prior to trial which at the present time needed to be given only at the end of the direct examination."* Minutes, Oregon Criminal Law Revision Commission, July 24, 1972. (Emphasis supplied.)

In *State v. Bray*, 31 Or App 47, 569 P2d 688 (1977), the issue involved the notes that an officer made on the back of his citation book regarding his observations of the defendant, a DUII suspect. After he prepared his final report, he erased the notes. The report was furnished to the defense. The state appealed a pretrial order suppressing the testimony of the police officer because the officer's notes had been destroyed. We concluded that "the plain language of the statute and the legislative history demonstrate that the officer's fragmentary notes are not a statement within the meaning of the statute." *Id.* at 50. We explained:

> "Accordingly, we construe the statute to require production of any 'statement' which is intended by its maker as an account of an event or a declaration of fact. The statutory purposes of providing witness statements are to minimize surprise, avoid unnecessary trials, provide adequate information for informed pleas and to promote truthful testimony by allowing examination based on prior inconsistent statements. Proposed Oregon Criminal Procedure Code at 186 (1972). Requiring preservation and availability of fragmentary notes intended only as a touchstone for memory would be more likely to discourage police officers from taking notes, with a consequent reduction in accuracy, than to promote the statutory goals. Furthermore, *it would be unfair and misleading to allow cross-examination of a witness based upon fragmentary or cryptic notes which were never intended to express a complete statement.* For these reasons, we hold that fragmentary notes are not subject to production under the discovery statutes." *Id.* at 51. (Emphasis supplied.)

In *State v. Johnson*, 26 Or App 651, 554 P2d 624, *rev den* 276 Or 555 (1976), the discovery of a handwritten report of an undercover police officer regarding a series of drug sales was the issue. Within 15 minutes of each sale, the undercover officer wrote by hand an account of the sale on a form developed for that purpose. After each sale, another police officer paraphrased the account in the form into a typewritten report of the transaction. The forms were destroyed after the undercover officer had reviewed and approved the typewritten versions. Ultimately, the typewritten versions were furnished to defendant as part of the discovery materials. We held that the state was required to disclose the handwritten

reports when it intended to call the undercover officer to testify about the sales, even though the reports were used in the preparation of another officer's final report, which was disclosed. In a concurring opinion, Schwab, C. J., explained:

"[W]hat we are dealing with are not fragmentary notes which became the basis of a written statement, nor stenographer's notes, nor notes which have been transcribed, or things of that ilk, but, rather, a report of a crime adequate in itself to form the basis for initiating prosecution." *Id.* at 658.

In *State v. Jackson*, 31 Or App 645, 571 P2d 523, *rev den* 281 Or 323 (1978), we held that a police officer's rough draft of a report that he dictated to a stenographer was not discoverable under ORS 135.815(1). We reasoned that the facts in *Jackson*

"differ[ed] from *Johnson* because [*Johnson*] involved two distinct reports one of which was not disclosed while here there is only one report which went through three stages of preparation. * * * [The officer's] statement [final report] was disclosed to defendant, and no purpose would be served by requiring production of notes or rough drafts used in the preparation of the single statement." *Id.* at 651-52.

Our holdings in these cases illustrate how we have applied ORS 135.815(1). In *Johnson*, the handwritten form was the only statement that could be used for purposes of impeaching the officer's testimony at trial. In *Bray*, we reasoned that it would be unfair and misleading to permit impeachment based on notes that were never intended to be a complete statement. In *Jackson* and *Morrison*, we limited the meaning of "statements" in the statute to matter that can be used for impeachment. What our holdings demonstrate is that an officer's notes become "relevant statements" within the meaning of the statute when they can be used for purposes of impeachment. In order for notes to be used for purposes of impeachment, they must be relevant to some witness' testimony. In this case, Moore's notes about his contact with Dean were not relevant to his testimony because the state did not intend to offer evidence about the excited utterance until it discovered the existence of Dean. When it made that discovery and formed the intention to call Dean as a witness, it complied with the discovery statutes. We conclude

that Moore's notes were not his "relevant written statements" within the meaning of the statute at the time that defendant maintains that he was entitled to discovery of them and that the trial court erred when it ruled that the state had committed a discovery violation because it did not produce them at that time.

Reversed and remanded.

**ARMSTRONG, J.,** dissenting.

Because I believe that the state violated ORS 135.815(1) by failing to give Moore's notes to defendant, and because I further believe that the trial court did not abuse its discretion by excluding Dean's testimony as a sanction for that violation, I respectfully dissent.

The majority concludes that the state had no obligation to disclose Moore's notes about the 9-1-1 call or Dean, because it did not intend to introduce that evidence through Moore. The majority bases that conclusion on an interpretation of ORS 135.815(1) that is incorrect and that is not supported by our established rules of statutory construction.

Whether a party has committed a discovery violation is a question of law. *State v. Lindquist*, 141 Or App 84, 88, 917 P2d 510 (1996). The majority is correct that a party is not required to provide the information specified in ORS 135.815(1) for people it does not intend to call as witnesses. *State v. Pena*, 108 Or App 171, 175, 813 P2d 1134, *rev den* 312 Or 526 (1991). Where the majority errs, I believe, is in interpreting the term "relevant" in that statute to refer only to the material about which a particular witness is expected to testify.

Of initial concern is the fact that the majority's approach to statutory interpretation cannot be reconciled with the approach required under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Under *PGE*, we are to determine the purpose of a statute from its words, unless those words, in context, are ambiguous. Here, the majority fails to take that first important step. By its terms, the statute requires the production of "relevant written or recorded statements or memoranda of any oral

statement[ ]" of any witness that the state intends to call. The central issue in this case is the meaning of the word "relevant."

The assumption that underlies the construction requirements of *PGE* is a simple one—the courts and, by extension, everyone else, should be able to divine the legislature's intent in enacting a particular statute by looking no further than the words that it used in it. For that reason, the first step in the analysis is always to read the text, in context, giving words of common usage their natural, plain and obvious meaning, unless they are otherwise defined in the statute.[1] *See Perez v. State Farm Mutual Auto Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980). This step also includes reference to well-established legal meanings for terms that the legislature has used. *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996). For the term "relevant," the common and legal definitions are strikingly similar. *Webster's Third New International Dictionary* 1917 (unabridged ed 1993) defines relevant as:

> "[B]earing upon or properly applying to the matter at hand[;] affording evidence tending to prove or disprove the matters at issue or under discussion[;] pertinent."

*Black's Law Dictionary* 1291 (6th ed) provides a legal definition in its discussion of the concept of relevant evidence:

> "[Relevant evidence is] evidence tending to prove or disprove an alleged fact. Evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The Oregon Evidence Code contains a similar definition:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 401.

---

[1] A subpart of this rule, which is not at issue in this case, is that the court may go beyond the common meaning of a word if the common meaning is inappropriate within the context of the remaining text of the statute.

Although I believe that a simple reading of the statute with those definitions in mind reveals that the legislature intended "relevant written or recorded statements or memoranda of any oral statement of [persons to be called as witnesses]" to include any information tending to prove or disprove the charges against the defendant, any doubt is banished by an examination of the statute in context.

In this case, the context of the statute includes not only the companion subsections cited by the majority, but prior case law interpreting the statute. *See Fred Meyer v. Hayes*, 325 Or 592, 595-96, 943 P2d 197 (1997). Ironically, the same subsections and case law cited by the majority in support of its analysis provide the context that, under a *proper PGE* analysis, shows that the legislature intended "relevant" in ORS 135.815(1) to have a much broader scope than the majority assumes. In *State v. Bray*, 31 Or App 47, 569 P2d 688 (1977), we stated that the purposes of ORS 135.815(1) were "[1] to minimize surprise, [2] avoid unnecessary trials, [3] provide adequate information for informed pleas and [4] to promote truthful testimony by allowing examination based on prior inconsistent statements." *Id.* at 51.[2] The majority has seized on the fourth purpose at the expense of the others. In this case, the statement sought would have revealed the existence of an important witness, the knowledge of whom could have had enormous influence on the course that defendant chose to take in response to the charge against her, thus implicating the first *three* purposes of the disclosure statute.

The majority points to subsections (3) of ORS 135.815 and subsection (2) of ORS 135.835 to bolster its argument that subsection (1) of ORS 135.815 refers to the testimony of specific witnesses whom the state intends to call, rather than to statements of general relevance to the case. 152 Or App at 679-80. The majority's reliance on those subsections is, frankly, puzzling. Both deal with the testimony of expert witnesses and require disclosure of any reports or

---

[2] That statement of statutory purpose is based on the commentary to the statute by the Oregon Criminal Law Revision Commission. *See* Oregon Criminal Law Review Commission, *Proposed Oregon Criminal Procedure Code* § 322, at 186 (1972).

statements, including test results, of such witnesses that either the state or defense intends to offer at trial. Both differ markedly from ORS 135.815(1) in that both *specifically* refer to evidence that a party intends to offer at trial through the testimony of witnesses, in that case experts. Had the legislature intended ORS 135.815(1) to apply *only* to statements relevant to trial testimony, it is clear from the drafting of the companion subsections that the legislature knew how to say that.

In essence, the majority's interpretation adds terms to the statute that are not there, contrary to the prohibition in ORS 174.010 against doing so.[3] Its interpretation *rewrites* the statute to require production of

> "[t]he names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statement of such persons *on the facts that the district attorney intends to elicit from such persons*."

Consequently, under the majority's interpretation, a district attorney could redact a witness' statement to exclude information relevant to the charge, as long as the redacted information was not information that the district attorney intended to elicit from that witness.

Furthermore, the majority's approach to the statute makes little sense. Discovery in criminal cases differs significantly from discovery in civil cases, but discovery in both is intended to give parties a reasonable opportunity to get relevant information about the factual issues in a case. The majority's approach denies criminal defendants discovery of relevant information that the state has gotten from people whom the state intends to call as witnesses. I can think of no reason why the legislature would establish a discovery system for criminal cases that works that way.[4]

---

[3] ORS 174.010 provides:

"In the construction of a statute, the office of a judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"

[4] In contrast with civil litigants, a criminal defendant does not have the ability to depose people who have information about the defendant's case. Consequently,

Finally, my belief that the rules requiring disclosure should be read broadly is supported by the fact that the legislature has provided statutory protections for those instances where disclosure would cause more harm than good. ORS 135.855(1)(a), which is cited by the majority, 152 Or App 680, protects work product, legal research, records, correspondence, reports and memoranda to the extent that those materials contain the opinions, theories or conclusions of the attorneys, peace officers or their agents in connection with the investigation, prosecution or defense of a criminal action. ORS 135.815(b) prevents the disclosure of the identity of informants when that identity is a prosecution secret and failure to disclose the identity will not infringe the constitutional rights of the defendant. Finally, the possibility that sensitive information, such as the existence of an ongoing investigation, might be revealed or jeopardized by premature disclosure is obviated by ORS 135.873(1), which allows the court, for good cause shown, to issue a protective order denying, restricting or deferring disclosure. To read the disclosure provisions as narrowly as the majority does would make those statutory protections superfluous.

Because the majority concludes that the notes were not discoverable, it does not address whether the state had possession or control of them. The state acknowledges that discoverable information *may* constructively be in the prosecution's control if another arm of the state possesses or controls it. It argues, however, that a party does not have control of discoverable materials under ORS 135.815 until it becomes aware of the materials and that it was not aware of the officer's notes until the deputy district attorney learned of the witness and decided to have him testify. Defendant argues that the trial court correctly ruled that any evidence

the defendant in this case could not depose the officer to learn the identity of the witness. Conversely, however, a criminal defendant is entitled to get the names and addresses of state witnesses, which is information that civil litigants are not required to share with each other, and a criminal defendant is entitled to get witness statements from the state without making the showing required of civil litigants to get comparable statements. *Compare* ORS 135.815(1) *with* ORCP 36 B(3). I believe that ORS 135.815(1) gives criminal defendants the right to get witness statements from state witnesses that are equivalent to the witness statements that a civil litigant could get under ORCP 36 B(3) under appropriate circumstances. Those statements are statements that contain relevant information, not statements that contain information that a party intends to elicit from witnesses.

that the police possess or control is within the control of the prosecution, regardless of whether the prosecution knows of its existence. Defendant is correct.

If the police have materials that are discoverable under ORS 135.815, then the prosecution is deemed to have control of them at that time. *State v. Warren*, 304 Or 428, 433, 746 P2d 711 (1987). That is because "the police are properly considered a part of the prosecution for the purposes of [ORS 135.815]." *Id*. at 433 n 5. "[S]tatements or memoranda of witnesses[5] are subject to the disclosure requirements of ORS 135.815 regardless of whether they ever actually came within the possession of the prosecutor[.]" *State v. Johnson*, 26 Or App 651, 655-56, 554 P2d 624, *rev den* 276 Or 555 (1976).

Nonetheless, the state argues that our decision in *State v. Fleischman*, 10 Or App 22, 32, 495 P2d 277, *rev den* (1972), supports its argument that the prosecution must know of the existence of discoverable material before its duty to disclose arises. In *Fleischman*, we concluded that the state could not refuse to disclose information held by another agency when the prosecutor knew of its existence. As an initial matter, we note that *Fleischman* and the cases on which it relied were based on the federal Due Process Clause, rather than on ORS 135.815. *Id*. at 31. But, more importantly, even if the analysis under the two provisions were the same, the Supreme Court decided *Warren* after our decision in *Fleischman*. The court concluded in *Warren* that "information that the prosecutor *may* obtain directly is within the prosecutor's 'control' as well, even if it was not in the prosecutor's physical possession." 304 Or at 433 (emphasis supplied); *see also Johnson*, 26 Or App at 655-56 (notes that were burned by police officer and not given to prosecutor were discoverable). The state is required to be diligent in determining whether there is discoverable material within its control; otherwise, it could avoid its duty under the statutes simply by avoiding asking certain questions or investigating certain subjects. *See id*. at 654 (prosecutor cannot avoid obligation under discovery statute by destroying evidence before filing a charging instrument); *see also Warren*, 304 Or at 433 (information is

---

[5] In that context, the reference to witnesses is to people who have witnessed a crime.

within state's control if the prosecutor "may obtain [it] directly").

Although the trial court found that the prosecution had acted in a timely manner "once [it was] aware of [the] information[,]" it is clear that the prosecution should have been more diligent in determining whether the officer had any written statements that could be relevant to the case. The prosecutor's only explanation for the failure to provide the notes is that she did not know that they existed. The prosecutor knew that the officer was involved in the investigation and that she intended to call him to testify, yet nothing suggests that she attempted to determine before the night of the trial whether he had notes relevant to the investigation. Although I recognize the time constraints under which prosecutors work, those time constraints cannot relieve the state of its obligation to locate and produce discoverable materials in a timely manner. *See State v. Morrison*, 33 Or App 9, 19 n 1, 575 P2d 988 (1978) (Joseph, J., dissenting) ("The duty to furnish discovery implies a correlative duty to collect and protect evidence the prosecution reasonably ought to know will be part of its case."). That did not occur here. Accordingly, the trial court did not err in concluding that a discovery violation had occurred.

Finally, I also would conclude that the trial court's exclusion of the witness' testimony was an appropriate sanction for the violation. Trial courts have broad discretion to choose appropriate sanctions for discovery violations. *See State v. Kull*, 298 Or 38, 44, 688 P2d 1327 (1984); *Johnson*, 26 Or App at 656. The sanctions that a court can impose for a violation include allowing the opposing party to inspect the withheld materials, granting a continuance to allow the opposing party time to respond to the new material or information, refusing to allow the evidence to be admitted or the witness to testify or any other order that the court considers appropriate. ORS 135.865. We review the sanction that a trial court imposes for an abuse of discretion. ORS 135.865; *Lindquist*, 141 Or App at 89.

In this case, the witness was the manager of a video store located near the scene of defendant's arrest. He testified that, on the night of the arrest, he had told a police officer

that a man had come into the store just before closing and had asked another employee to get the manager. He testified that he had been at the rear of the store and had not seen the man come in. He explained that, when he saw the man, the man was out of breath and flushed, looking as if he had been running. The man pointed to defendant's car and told the witness that the woman in the car had almost run over him. He said that the woman had insisted that she needed to continue on. He said he was concerned because the car had two flat tires and the woman seemed to be very intoxicated. He asked the witness to call 9-1-1. The witness looked out of the store window and saw a black car sitting off of the shoulder of the road. He could see that someone was sitting in the driver's seat of the car. He could not identify the person. He went to the rear of the store to call 9-1-1. When he returned, the man was gone. The employee told the witness that the man had left in a direction opposite from the car. The witness did not know the man's name or how to reach him. The witness testified that the officer was taking notes during their conversation.

Defendant's attorney argued that, because three months had elapsed since defendant had been charged, exclusion of the witness' testimony was the only practical sanction because defendant had suffered serious prejudice as a result of the delay in getting information about the witness' statement. He said that a continuance would not remedy the prejudice because it was unlikely that the man who had spoken with the witness could be found, because the trail was "cold." He also argued that defendant would be less likely to get reliable information from the coemployee, who had first seen the unknown man and who had seen the encounter between the man and the witness.

The trial court found that defendant would have used the information in the officer's notes to locate other witnesses and to prepare to cross-examine the witness. Those findings are supported by evidence in the record and we are bound by them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). The trial court concluded that granting a continuance would be "a reward to the state, at great prejudice to the defense." The trial court continued:

"If we are to ever get the reporting officers to do the job that the statute requires them to do, so that the state can do the job that [it is] required to do, it is not to set it over to fix it. And so, I believe that, based upon what I read in [*State v. Dyson*, 292 Or 26, 34-35, 636 P2d 961 (1981)], the appropriate result here is not to allow [the witness] to testify in this case. He was clearly known, and the content of his testimony was clearly known, and it was not disclosed to the defendant's prejudice."

The opportunity to prepare to cross-examine a witness is "of inestimable benefit to the examiner and cross-examiner." *State v. Mai*, 294 Or 269, 279, 656 P2d 315 (1982); *Bray*, 31 Or App at 51. Likewise, the opportunity to locate and speak with all potential witnesses is of great benefit. *Mai*, 294 Or at 279. The trial court correctly concluded that defendant was prejudiced by the delay.

Additionally, the trial court properly considered whether there was any meaningful alternative to exclusion. *See State v. Gill*, 96 Or App 358, 361, 772 P2d 957 (1989) (trial court must consider the benefits and detriments of a particular sanction); *see also State v. Moss*, 147 Or App 658, 663, 938 P2d 215, *rev den* 325 Or 491 (1997) (trial court considered the prejudice to the defendant and whether alternate sanctions to exclusion would suffice). It concluded that a continuance would not alleviate the prejudice and that exclusion was necessary to impart to police officers the importance of providing all potentially valuable information to the prosecution. To that, I would add that to exclude the officer's testimony, as we did in *Johnson*, but allow the witness' testimony, would render the sanction meaningless. *See Moss*, 147 Or App at 663 (where exclusion is the only meaningful sanction available, it is not an abuse of discretion to exclude a defense witness).

The trial court did not abuse its discretion in excluding the witness' testimony as a sanction for the state's failure to provide the officer's notes. Accordingly, I respectfully dissent.

Riggs and DeMuniz, JJ., join in this dissent.