Argued and submitted September 10, 1999, decision of Court of Appeals affirmed, order of circuit court reversed, and case remanded to circuit court for further proceedings May 12, 2000

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# CLAUDIA DIVITO,
*Petitioner on Review.*

(CC TC95-12218; CA A90618; SC S45761)

5 P3d 1103

John Henry Hingson III, Oregon City, argued the cause and filed the petition for petitioner on review.

Kaye McDonald, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief on the merits were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, Gillette, Van Hoomissen, and Durham, Justices.**

VAN HOOMISSEN, J.

Durham, J., concurred and filed an opinion.

** Kulongoski, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

In this criminal case, the court is asked to construe ORS 135.815 (1997), which provides, in part:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"(1) The names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."[1]

Defendant was charged with driving while under the influence of intoxicants (DUII). ORS 813.010. She seeks review of the Court of Appeals' decision reversing the trial court's pretrial order that excluded the testimony of a state's witness as a sanction for an asserted violation of ORS 135.815(1) by the state. *State v. Divito*, 152 Or App 672, 955 P2d 327 (1998). For the reasons explained below, we affirm.

We take the following facts from the Court of Appeals' opinion and from the record. A police emergency response operator ("9-1-1" operator) dispatched State Police Trooper Shephard to the scene of an accident. Trooper Moore also arrived at the scene. The troopers found defendant in an intoxicated state and arrested her for DUII. Following defendant's arrest, Moore went into a nearby video store and spoke with the manager, Dean. Dean told Moore that an unidentified man had come into the video store and asked him to telephone 9-1-1 to report an accident. The man told Dean that, just minutes before, he almost had been hit by a woman on the road, and the man pointed to a car off the side of the road about 200 yards away. The man said that, after the near miss, he had looked to see if the woman was injured. The man said that the woman was intoxicated and that she kept mumbling that she had to get home. The man said that he had told the woman that she should not drive and that he would

---

[1] ORS 135.815 was amended by the 1999 Legislature. Or Laws 1999, ch 304, § 1. The parties do not argue that that amendment affects the analysis or outcome of this case.

obtain help. After listening to the man's report, Dean went into his office and telephoned the 9-1-1 police emergency response number. When Dean returned, the unidentified man had left. The conversation in which Dean related the man's story to Moore lasted about one minute.

Moore took notes of his conversation with Dean, but did not write a police report. Shephard's police report, which the state furnished to defendant during pretrial discovery, contained information about Moore's investigation, including the fact that Moore had contacted a video store clerk. However, Shephard's report did not contain Dean's name or address, or disclose what Dean had told Moore.

Pursuant to ORS 135.815(1) (1997), the district attorney advised defense counsel that she intended to call Moore as a witness at trial.

While reviewing her case the night before defendant's trial, the district attorney wondered why the police report contained nothing about any contact with a 9-1-1 operator. She telephoned 9-1-1 and reached a supervisor, who was able to retrieve information about the call that the 9-1-1 operator had received on the night of the accident. Using that information, the district attorney was able to identify and contact Dean that night. Dean told the district attorney about the unidentified man who had come into the video store on the night of the accident and what the man had reported. At that time, the district attorney decided to subpoena Dean to testify about the unidentified man's statements as an "excited utterance." See OEC 803(2) (setting out excited utterance exception to hearsay rule).[2] Dean was served with a subpoena later that night. When the district attorney learned that the subpoena had been served on Dean, she telephoned defense counsel's office and left a message disclosing her intention to call Dean as a witness.

The next morning, during a pretrial hearing, the district attorney gave defense counsel a written summary of the statement that Dean had made to her the night before.

---

[2] This case has proceeded on the theory that the unidentified man's statements qualify as an "excited utterance." Neither party has raised that question to this court, and we do not consider it.

Defendant objected, arguing that the state had violated ORS 135.815(1) (1997), because the district attorney had not disclosed the information earlier.

Dean was the only witness at the pretrial hearing. He testified that, on the night of the accident, he had had a conversation with Moore and that Moore had made notes during their conversation. Insofar as the record shows, that was the first time that either the district attorney or defense counsel learned that Moore had made notes during his conversation with Dean.[3] Defendant again objected, arguing that Moore "should have turned [his notes] over to the prosecutor long before trial" and that, "had he done so, the district attorney would have discovered the existence of Dean and the substance of his statement." The district attorney responded that ORS 135.815(1) (1997) did not require the state to disclose the notes at a time when the state did not intend to call Dean as a witness or to offer evidence through Moore about the unidentified man's conversation with Dean. The district attorney asserted that, in compliance with ORS 135.845, she conveyed that information to defense counsel as soon as she became aware of Dean's existence.[4]

The trial court ruled that the state's failure to provide the defense with information about Dean's identity and what Dean had told Moore was a discovery violation. We set out the court's ruling at length, because it is pivotal to the appropriate disposition of this case. The trial court found:

> "The District Attorney's Office, in and of itself, did everything they could do, in a timely fashion once they were aware of this information.
>
> "The problem, I find is one created by the police officers in the beginning. The DA's Office is in the position of having

---

[3] Moore's notes were not introduced into evidence at the hearing and are not part of the record.

[4] ORS 135.845 provides, in part:

"(1) The obligations to disclose shall be performed as soon as practicable following the filing of an indictment or information in the circuit court * * *.

"(2) If, after complying with the provisions of ORS 135.805 to 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information."

to deal with what they get and not to create that which the investigating officers didn't complete.

"The police are indeed a branch of the State, and to that extent, have some obligations in the discovery area similar to that which the State has.

"There is no mention of any kind, in any report made available to the defense, that anybody talked to, identified or discovered this critical witness * * *. [T]he evidence is that [Dean] was visited by some police officer who took notes that night. So [Dean's] identity and the information he had to offer, was known to the State on the night of the event.

"Then, from my reading of the police reports, while it's not crystal clear in there that there's a dispatch call * * * there is some indication in there that there was a dispatch call. The 9-1-1 tape is available to anybody * * *.

"So, the fact that there was a [Dean] at Hollywood Video could have been discovered by the defense as well. What could never have been discovered by the defense, without the police officer writing the proper report, is what [Dean] was going to say. * * *

"So, *I find*, first, *a discovery violation, not the DA's office, but certainly through the police, who neglected to write a pretty critical piece of information up.*"

(Emphasis added.) As a sanction, the court excluded Dean's testimony about the unidentified man's statements.[5] The state appealed. *See* ORS 138.060(3) (state may appeal pretrial order suppressing evidence).

A divided Court of Appeals, sitting en banc, reversed. The majority concluded that the state had not violated ORS 135.815(1) (1997). Focusing on the phrase "relevant * * * statements * * * of such persons," the court reasoned that "relevant statements" are statements pertaining

---

[5] The trial court denied the state the benefit of a witness, rather than simply granting a continuance to permit the defense to prepare for the new evidence, based on this reasoning:

"[I]f we are ever going *to get the reporting officers to do the job that I think the statute requires them to do* so that the State can do the job that they're required to do, it is not to set [the case] over to fix it."

(Emphasis added.)

to testimony that the district attorney intends to elicit from a witness at trial. *Divito*, 152 Or App at 679-80. The court explained:

> "[A]n officer's notes become 'relevant statements' within the meaning of [ORS 135.815(1) (1997)] when they can be used for purposes of impeachment. In order for notes to be used for purposes of impeachment, they must be relevant to some witness' testimony. In this case, Moore's notes about his contact with Dean were not relevant to his testimony because the state did not intend to offer evidence about the excited utterance until it discovered the existence of Dean. When it made that discovery and formed the intention to call Dean as a witness, it complied with the discovery statutes."

*Id.* at 683. Because the court concluded that Moore's notes were not discoverable, it did not address whether the notes were within the "possession or control" of the district attorney under ORS 135.815 (1997).

Three members of the court dissented. The dissenters agreed with the trial court that the state had violated ORS 135.815(1). *Id.* at 684 (Armstrong, J., dissenting). The dissenters concluded that the legislature intended "relevant statements" in ORS 135.815(1) to have a much broader scope than the majority assumed:

> "[T]he legislature intended 'relevant *written or recorded* statements or memoranda of any *oral* statement of [persons to be called as witnesses]' to include any information tending to prove or disprove the charges against the defendant[.]"

*Id.* at 686 (Armstrong, J., dissenting). We allowed defendant's petition for review.

Defendant argues, as did the Court of Appeals' dissenters, that the discovery rules should be read broadly to include any information tending to prove or disprove the charges against her. Defendant asserts that ORS 135.815(1) (1997) requires the state to disclose to a defendant either notes or complete reports of a police officer that memorialize what state's witnesses said to the officer concerning the facts that gave rise to the prosecution of the defendant. Defendant

further asserts that any material or information in the possession of the police automatically is deemed to be within the possession or control of the district attorney, regardless of whether the district attorney actually knows of its existence. In support of that latter assertion, defendant relies primarily on *State v. Warren*, 304 Or 428, 746 P2d 711 (1987), which we discuss *post*.

■ At the outset, we emphasize that the rules relating to reciprocal discovery are entirely statutory.[6] The legislature may abolish statutory discovery at any time and leave criminal cases to be tried as they were before the enactment of the discovery statutes. Even if a defendant might find material and information in the possession of the state helpful to the defense generally, that material must be turned over to the defense only if it falls within the statutory directive (or if it must be disclosed for independent constitutional reasons). Statutory discovery is nothing more than what the legislature intended it to be.

■ Turning to this case, the question presented is one of statutory interpretation. In interpreting a statute, this court follows the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The first level of analysis is the text and context of the statute. *Id.* The text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. *Id.* at 610.

■ This case is disposed of at that first level of analysis. By its terms, ORS 135.815 (1997) imposes discovery obligations only on the district attorney. The statute imposes no separate discovery obligations on the police. Moreover, ORS 135.815(1) (1997) does not require disclosure of material and information unless it is a name, an address, a written or recorded statement, or a memorandum of an oral statement.

---

[6] ORS 135.815(1) (1997) is derived generally from the more extensive provisions of the American Bar Association Standards Relating to Discovery and Procedure Before Trial, § 2.1 (approved draft 1970). The enumeration of discoverable material and information in ORS 135.815 (1997) is similar but not identical to the prosecutor's disclosure obligations described in § 2.1 of the ABA Standards. *See* John W. Osburn, *Pretrial Discovery Under The Oregon Criminal Procedure Code*, 10 Willamette L J 145 (1974) (reviewing each section of the pretrial discovery article and reflecting on some of the policy choices).

The statute further requires that, to be discoverable, the material and information in question be within the "possession or control" of the district attorney. As noted, the Court of Appeals divided over what it deemed to be the dispositive question in the case, *viz.*, whether Moore's notes were "relevant statements" within the meaning of ORS 135.815(1) (1997) at the time when defendant maintains that she was entitled to discovery. We conclude, however, that there is another, more fundamental reason, based on the foregoing reading of the statute, for holding that the trial court erred.

The record shows that the district attorney was unaware of Dean's existence until the night before trial and that she was unaware that Moore had made notes during his conversation with Dean until Dean testified to that effect at the pretrial hearing. The trial court implicitly accepted the district attorney's good faith in the matter when it found that

> "[t]he District Attorney's Office, in and of itself, did everything they could do, in a timely fashion, once they were aware of this information."

The court nonetheless found a discovery violation,

> "not [by] the DA's office, but certainly through the police, who neglected to write a pretty critical piece of information up."

The trial court's justification for invoking the sanction under the discovery statute was based entirely on the failure of the police to include certain information in the reports that they had submitted to the district attorney's office.

■ Stating the trial court's rationale in those bald terms leads to the following question: Where in ORS 135.815 (1997) (or in any other statute) is there a requirement that the police place certain information in their notes or reports, at the risk of having evidence suppressed if they do not? The answer is plain: There is no such requirement. Neither ORS 135.815 (1997) nor, so far as we are aware, any other statute imposes discovery obligations on the police. And, even if there were some other statute that imposed such a requirement, the court claimed authority to rule as it did only under ORS 135.815 (1997). It follows that the trial court acted on the basis of a misunderstanding of the law.

The trial court appears to have based its ruling on the following passage in *State v. Warren*, 304 Or 428, 433, 746 P2d 711 (1987):

> "In a prosecution, the prosecutor is responsible for evidence in the possession of the police. * * * And, of course, information that the prosecutor may obtain directly is within the prosecutor's 'control' as well, even if it was not in the prosecutor's physical possession."

Those statements are correct, but must be understood in their proper context.

In *Warren*, a criminal defendant sought discovery of a state agency's files that contained memoranda of statements by witnesses. The state argued that, although the prosecutor was entitled by statute to request copies of the files, the prosecutor had not done so and, consequently, did not possess or control the files within the meaning of ORS 135.815 (1997). This court, in the passage quoted above, disagreed, concluding that the prosecutor's statutory right to obtain access to the files amounted to "control" over the files under ORS 135.815 (1997). Significantly, *Warren* compelled the discovery of agency files that already existed. We do not read *Warren* to suggest that the state's discovery obligation under ORS 135.815 (1997) includes a duty to expand the scope of existing documents, such as police reports, to incorporate additional information of which only the police are aware. The trial court's reliance on *Warren* for the imposition of that kind of discovery obligation under ORS 135.815(1) (1997) was not justified.

The trial court erred in finding a violation of ORS 135.815(1) (1997) and in imposing a sanction based on that supposed violation. Our identification of the trial court's principal error means that the "relevant statements" issue over which the Court of Appeals divided need not be considered here. Although we express no opinion concerning the Court of Appeals' rationale, we affirm the decision of that court to reverse the trial court's order and to remand the case to the trial court for further proceedings.[7]

---

[7] We express no opinion respecting what ruling would be appropriate if, on remand, defendant wishes to see a copy of any notes that Moore actually might have made of his conversation with Dean.

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring.

I write separately to state the basis for my concurrence with the court's disposition.

I agree that ORS 135.815(1) (1997) does not impose on police officers an obligation to incorporate into their police reports all pertinent information of which they are aware regarding a person who has witnessed or has information about a crime.[1] For that reason, the trial court erred in concluding that the officers violated ORS 135.815(1) (1997) in failing to include in their police reports a summary of Dean's statements to Trooper Moore.

The trial court's reliance on that reasoning obviated the need for it to address separately another question that defendant's motion raised. That question is whether ORS 135.815(1) (1997) obligated the state to disclose Moore's notes that he wrote during or after his conversation with Dean. Defendant's discovery request sought any notes that Moore might have prepared. The trial court found that Moore had made notes of his exchange with Dean and that the information that Dean had related to Moore was critically important to this case.

My preliminary view is that Moore's notes fall within the scope of ORS 135.815(1) (1997) because they constitute a "memorand[um] of [an] oral statement" by the state's witness, Dean. Moore's notes are "relevant" to defendant's criminal proceeding, within the meaning of ORS 135.815(1) (1997), because the notes tend to make the existence of a fact that is of consequence to the determination of

---

[1] ORS 135.815(1) (1997) provides:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"(1) The names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

the proceeding—namely, whether defendant had driven while intoxicated—more probable or less probable than would be the case without the notes. *See* OEC 401 (defining "relevant evidence" in that manner). The legislature did not confine the scope of the requirement of relevance in ORS 135.815(1) (1997) to statements or memoranda that concern the anticipated trial testimony of a witness.

Moore's notes might have referred almost entirely to inculpatory information, but, under the discovery statute, that is beside the point. The notes were in Moore's possession when defendant sought discovery of them and, thus, were within the prosecutor's control even if not in the prosecutor's physical possession. *See State v. Warren*, 304 Or 428, 433, 746 P2d 711 (1987) (applying that analysis). Under ORS 135.815(1) (1997), the significant fact is not that the prosecutor had no personal knowledge of Dean until the eve of trial, but that, in response to defendant's request for discovery, the prosecutor failed to disclose a police officer's notes that were under the prosecutor's control and that pertained to defendant's guilt or innocence.

However, and assuming that my tentative view of the issue is correct, we cannot determine from the record whether the trial court would have ordered the same sanction solely for the state's nondisclosure of Moore's notes, because the trial court relied on another rationale. That fact precludes this court from affirming the trial court on an alternative decisional basis. Our decision reserves the questions of the discoverability of Moore's notes and any potential sanction for nondisclosure for consideration by the trial court on remand. 330 Or at 328 n 7. I agree with that disposition of those issues.

For the foregoing reasons, I concur.