Argued and submitted January 17, reversed and remanded March 13, petition for review denied June 11, 2002 (334 Or 288)

STATE OF OREGON,
*Appellant,*

*v.*

CLAUDIA DIVITO,
*Respondent.*

TC9512218; A112224

42 P3d 918

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

John Henry Hingson III argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

The state appeals a pretrial order holding that it committed a discovery violation under ORS 135.815 in defendant's prosecution for driving under the influence of intoxicants.[1] The state assigns error to the trial court's rejection of documents offered as an exhibit at a hearing relating to the asserted violation, its finding of a discovery violation, and its exclusion of a witness as a sanction. We reverse and remand.

This is the state's second appeal of the trial court's determination that a discovery violation had occurred and its imposition of witness exclusion as a sanction. In the first appeal, we reversed. *State v. Divito*, 152 Or App 672, 955 P2d 327 (1998) (hereinafter *Divito I*). On review, the Oregon Supreme Court affirmed our decision on different grounds. *State v. Divito*, 330 Or 319, 5 P3d 1103 (2000) (*Divito II*). We take the underlying facts, relating to events that occurred in 1995, from the Supreme Court opinion in *Divito II*.

> "A police emergency response operator ('9-1-1' operator) dispatched State Police Trooper Shephard to the scene of an accident. Trooper Moore also arrived at the scene. The troopers found defendant in an intoxicated state and arrested her for DUII. Following defendant's arrest, Moore went into a nearby video store and spoke with the manager, Dean. Dean told Moore that an unidentified man had come into the video store and asked him to telephone 9-1-1 to report an accident. The man told Dean that, just minutes before, he almost had been hit by a woman on the road, and the man pointed to a car off the side of the road about 200 yards away. The man said that, after the near miss, he had looked to see if the woman was injured. The man said that the woman was intoxicated and that she kept mumbling

---

[1] ORS 135.815 was amended in 1999 in respects not relevant to this appeal. Accordingly, all references to ORS 135.815 are to the 2001 version, which provides, in part:

"(1) Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to a represented defendant the following material and information within the possession or control of the district attorney:

"(a) The names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

that she had to get home. The man said that he had told the woman that she should not drive and that he would obtain help. After listening to the man's report, Dean went into his office and telephoned the 9-1-1 police emergency response number. When Dean returned, the unidentified man had left. The conversation in which Dean related the man's story to Moore lasted about one minute.

"Moore took notes of his conversation with Dean, but did not write a police report. Shephard's police report, which the state furnished to defendant during pretrial discovery, contained information about Moore's investigation, including the fact that Moore had contacted a video store clerk. However, Shephard's report did not contain Dean's name or address, or disclose what Dean had told Moore.

"Pursuant to ORS 135.815(1) (1997), the district attorney advised defense counsel that she intended to call Moore as a witness at trial.

"While reviewing her case the night before defendant's trial, the district attorney wondered why the police report contained nothing about any contact with a 9-1-1 operator. She telephoned 9-1-1 and reached a supervisor, who was able to retrieve information about the call that the 9-1-1 operator had received on the night of the accident. Using that information, the district attorney was able to identify and contact Dean that night. Dean told the district attorney about the unidentified man who had come into the video store on the night of the accident and what the man had reported. At that time, the district attorney decided to subpoena Dean to testify about the unidentified man's statements as an 'excited utterance.' *See* OEC 803(2) (setting out excited utterance exception to hearsay rule). Dean was served with a subpoena later that night. When the district attorney learned that the subpoena had been served on Dean, she telephoned defense counsel's office and left a message disclosing her intention to call Dean as a witness.

"The next morning, during a pretrial hearing, the district attorney gave defense counsel a written summary of the statement that Dean had made to her the night before. Defendant objected, arguing that the state had violated ORS 135.815(1) (1997), because the district attorney had not disclosed the information earlier.

> *"Dean was the only witness at the pretrial hearing. He testified that, on the night of the accident, he had had a conversation with Moore and that Moore had made notes during their conversation.* Insofar as the record shows, that was the first time that either the district attorney or defense counsel learned that Moore had made notes during his conversation with Dean. Defendant again objected, arguing that Moore 'should have turned [his notes] over to the prosecutor long before trial' and that, 'had he done so, the district attorney would have discovered the existence of Dean and the substance of his statement.' The district attorney responded that ORS 135.815(1) (1997) did not require the state to disclose the notes at a time when the state did not intend to call Dean as a witness or to offer evidence through Moore about the unidentified man's conversation with Dean. The district attorney asserted that, in compliance with ORS 135.845, she conveyed that information to defense counsel as soon as she became aware of Dean's existence." *Divito II*, 330 Or at 321-23 (emphasis added; footnotes omitted).

The trial court concluded that the failure of the police to include information about Moore's notes in their reports provided to the district attorney's office constituted a discovery violation under ORS 135.815. *Id.* at 327. As a sanction, the court excluded Dean's testimony about the unidentified man's statements. The state appealed, and, as noted, this court reversed:

> "We conclude that Moore's notes were not his 'relevant written statements' within the meaning of [ORS 135.815] at the time that defendant maintains that [she] was entitled to discovery of them and that the trial court erred when it ruled that the state had committed a discovery violation because it did not produce them at that time." *Divito I*, 152 Or App at 683-84.

On review, the Supreme Court did not address this court's holding in *Divito I* but, instead, held that the trial court had erred in finding a discovery violation, because ORS 135.815 did not require investigating police officers to include any specific information in their reports. *Divito II*, 330 Or at 327. The court remanded the case to the trial court "for further proceedings," *id.* at 329, expressly reserving the issue of what ruling would be appropriate "if, on remand, defendant

wishe[d] to see a copy of any notes that Moore actually might have made of his conversation with Dean." *Id.* at 328 n 7.

On remand, defendant moved in August 2000 to compel the state to produce Moore's notes. A hearing on that motion was subsequently canceled, and defendant's counsel sent a proposed order on remand to the trial court and the district attorney's office. The record does not clearly indicate what prompted the submission of the proposed order. The proposed order stated:

"This matter coming before the court on remand from the Oregon Supreme Court, the court finding actual prejudice to the defendant exists such that under *State v. Dyson*[, 52 Or App 833, 629 P2d 887, *rev'd on other grounds*, 292 Or 26, 636 P2d 961 (1981),] no other sanction other than exclusion is appropriate,

"IT IS HEREBY ORDERED, as a sanction for the state's failure to disclose [Moore's] notes, [Dean] shall not be permitted to testify about the excited utterances of the stranger."

The state objected to the order, and on October 10, 2000, the trial court held a hearing on the state's objection. A different deputy district attorney represented the state than had appeared at the 1995 hearing. He opposed the motion on the ground that Moore's notes merely duplicated information available in the police report. He tendered a copy of the notes to the court "just so that we are not talking about [them] in the abstract." Defendant's counsel objected, stating that

"I am going to object to counsel arguing facts outside the record. * * *

"* * * We do not proceed in criminal matters on the basis of * * * things that are not admitted into evidence, giving the defendant an opportunity to make objection, et cetera. So I object to counsel arguing facts outside the record that's before this court."

In response, the state's attorney sought to introduce the notes into evidence at the hearing:

"Well, Your Honor, it's difficult for me to argue that everything that's in [Moore's] notes had been reduced to

writing in [Shephard's police report] without looking at the notes. * * *

"* * * * *

"* * * if it's on remand now, I think the court now has the ability to look beyond some of the evidence that was in existence for five years. I mean it's on remand, we are re-looking at this issue. *I would like to introduce the notes into evidence at this time.*

"I have read the transcript. I am at a disadvantage because I wasn't there. *And I don't remember anyone saying that Dean's statements were reduced to writing. Because if that's the case, then I can certainly see where there would be a discovery violation. And as I look at the notes, [Moore's] notes, there's nothing in there about statements made by Dean.* And that's why I am sort of confused about the allegation that there's a discovery violation." (Emphasis added.)

> The court rejected the offer:

"To the extent that the state is attempting to offer what it claims is [Moore's] notes, and I have no way to know if the state's representation is accurate or if they are even the complete notes, the attempt to offer that into the record at this time as an exhibit is not going to be allowed. * * *

"* * * * *

"It's inappropriate for the—to offer it as evidence. I see no other reason for it to come in.

"There is a clear finding by me and accepted by the Supreme Court that Trooper Moore made notes. The state failed to obtain those notes and failed to provide those notes to the defense. I find that the failure to do that, on the record as set before [me], is a discovery violation such that the only appropriate sanction is exclusion of [Dean's] testimony."

On appeal, the state assigns error to (1) the trial court's rejection of the documents offered as an exhibit; (2) its conclusion that the state committed a discovery violation; and (3) its exclusion of Dean's testimony as a sanction.

■ As a threshold matter, defendant argues that the emphasized portion of the state's attorney's argument

waived or invited any error committed by the trial court. Defendant's argument assumes that the Supreme Court's recital of facts in *Divito II* established *as a matter of historical fact* that Moore's notes reduced Dean's statements to writing. Because the state's attorney at the 2000 hearing conceded that the state's failure to provide Dean's statement, reduced to writing, would constitute a discovery violation, defendant argues that the state cannot challenge the violation found. Defendant's assumption is mistaken.

More accurately, the Supreme Court simply accepted at face value *Dean's testimony* that Moore had taken notes during their conversation. *See Divito II*, 330 Or at 323 ("Dean was the only witness at the pretrial hearing. He testified that * * * he had had a conversation with Moore and that Moore had made notes during his conversation."). The *content* of the notes was not at issue before the court, and the court did not address it. Thus, the state's attorney's concession neither invited the trial court to rule as it did nor waive any claim that the court erred in doing so.

We turn to the state's first assignment of error pertaining to the offer of the documents. Defendant initially contends that the first assignment of error is not properly before us, because the state mistakenly assigned error to the trial court's *rejection of the documents offered* rather than its *sustaining of defendant's objection* to the documents. We disagree. OEC 103(1) provides that error may be predicated on an evidentiary ruling only if it affected a substantial right of the complaining party and

"(a)  In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

"(b)  In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Thus, where evidence is *admitted*, the aggrieved party appeals from an adverse ruling on a timely objection or a motion to strike. By contrast, where evidence is *excluded*, the

complaining party appeals from the ruling excluding the evidence. The state was not required formalistically to characterize the court's ruling as one "sustaining an objection." Ordinarily, we review a trial court ruling excluding evidence for errors of law and abuse of discretion, as appropriate. *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 146-47, 20 P3d 837 (2001) (citing *State v. Rogers*, 330 Or 282, 310-12, 4 P3d 1261 (2000)). Where the trial court has excluded evidence for lack of an adequate foundation, we review for legal sufficiency of the foundational evidence. *State v. Park*, 140 Or App 507, 511, 916 P2d 334, *rev den* 323 Or 690 (1996).

The trial court sustained defendant's objection to the state's offer on the ground that the documents were not properly authenticated and that it had no way of knowing if the state's representation that the documents were Moore's was accurate or if they were even complete notes. On appeal, the state contends that (1) the contents of the proffered documents themselves could have provided foundational evidence;[2] (2) the deputy district attorney's representations served as an adequate foundation in the context of a hearing on an alleged discovery violation; and (3) any attempt to offer further foundational evidence would have been futile in light of the trial court's reaffirmation of its 1995 determination that Moore had made notes of his conversation with Dean.

■     We have no doubt that there are instances in which a document offered as evidence may, by "appearance" or "other distinctive characteristics," be self-authenticating. *See* OEC 901(2)(d). However, the state did not argue to the trial court that the notes were so distinctive. Accordingly, the court was required to determine whether the state had offered foundation evidence sufficient to support a finding that the documents constituted Moore's complete notes in the investigation of defendant's case. *See Park*, 140 Or App at 512 (citing OEC 104 Commentary (1981)). It could have done so, for example, by calling a witness with knowledge that the documents were Moore's complete notes, OEC 901(2)(a).

---

[2] The state observes that "[a]s far as the trial court knew [when it rejected the exhibit], the notes could have shown on their face that they were taken by [Moore] on the date of the charged incident and were complete."

However, the state failed to lay any foundation at all for the documents and, thus, the trial court did not err in excluding them from evidence.[3]

We also agree that, when evidence is excluded, counsel generally may make an effective offer of proof by summarizing the excluded evidence. *Benchmark Properties v. Hipolito*, 161 Or App 598, 605, 984 P2d 927 (1999). However, that rule does not mean that an offer of proof is sufficient if counsel represents that a document has a certain identity but in addition (1) fails to represent that he or she is prepared to lay a foundation establishing its authenticity and, if the court excludes the document from evidence, (2) fails to request that the document be identified and placed in the record as an offer of proof. *See State v. Busby*, 315 Or 292, 298, 844 P2d 897 (1993) (holding that an adequate offer of proof is normally required to preserve error when a trial court excludes evidence).

The state could have requested a continuance in order to obtain Moore's foundational testimony to support admission of the notes. At the very least, when the trial court declined to receive the documents in evidence, the state could have requested that they be marked for identification and included in the record as part of an offer of proof. However, the state did neither of those things, leaving the entire debate about the content and authorship of the documents to fruitless conjecture. Although the right to make an offer of proof is "absolute," *State v. Rodriguez*, 115 Or App 281, 287, 840 P2d 711 (1992), the trial court did not reject an adequate offer of proof. Instead, the court properly excluded the documents from evidence on the ground that the state failed to lay a sufficient foundation for their admission. At that point, the state failed to make an offer of proof that would permit appellate review.

---

[3] Although the state argues that courts often accept the representations of counsel concerning "discovery" matters, it does not contend that the Oregon Evidence Code is inapplicable to offers of evidence or—if evidence is excluded—to offers of proof, at a hearing to determine whether a discovery violation has occurred. There is no authority for such a proposition. *See* OEC 101(2) (providing that the Oregon Evidence Code applies generally to "criminal actions and proceedings"). Although OEC 104(4) enumerates exceptions to the Code's application, the state does not assert that any of those exceptions applies here.

■ The question remains whether a more extensive offer of proof was excused by the trial court's reaffirmation of its 1995 finding that Moore had made notes of his conversation with Dean. The state asserts that the trial court refused to receive the documents in evidence based on a mistaken belief that the record was fixed at the time of the first appeal from the 1995 ruling with respect to whether a discovery violation of any sort had occurred. If that were its view, the trial court would have been mistaken. Moore's notes were never produced in the 1995 hearing and, as the Supreme Court observed in *Divito II,* were not part of the record in the first appeal. 330 Or at 322. After the case was remanded, defendant's counsel filed a motion to compel disclosure of Moore's notes. In *Divito II,* the Supreme Court had expressly left the door open for such a request. *Id.* at 328 n 7. There is no reason to believe that the Supreme Court's decision in *Divito II* fixed the record for purposes of remand, especially where the very subject of debate—the notes themselves—never had been examined by the court.

At the October 10 hearing, defendant's counsel stated:

"But the [Supreme Court] said [that] Moore took notes of his conversation with Dean but did not write a police report. So there's clear evidence from the record in this case, and as part of the decision of the Supreme Court in [*Divito II*] it is based upon that fact that was established that was accepted by the court."

The trial court agreed, ruling that "there is a clear finding by me and accepted by the Supreme Court that [Moore] made notes." The state characterizes that ruling, together with the court's further statement that it was "inappropriate for the— to offer it as evidence," as an indication that it would have been futile to make a further offer of proof, because the court believed that the record was fixed in 1995.

We do not read the court's comments so restrictively. Rather, it appears that—after rejecting the offer of the documents into evidence—the court relied on its previous finding, based on Dean's testimony during the 1995 hearing, that Moore had made notes of their conversation. Nothing that the court said constituted a clear legal ruling that it would

exclude the proffered documents from evidence if an adequate foundation for their admission had been laid. *Cf. State v. Olmstead,* 310 Or 455, 461, 800 P2d 277 (1990) (holding that an offer of proof is not necessary to preserve an issue for appeal when the asserted error does not relate primarily to the admissibility of particular evidence but involves an underlying legal ruling that results in the exclusion of evidence as a consequence); *Marcoulier v. Umsted,* 105 Or App 260, 262, 805 P2d 140, *rev den* 311 Or 426 (1991). In the absence of admissible evidence to the contrary, the trial court was entitled to rely, in determining whether a discovery violation had occurred, on Dean's testimony that Moore had made notes of their conversation.

The state next contends that the trial court erred in determining that the state had committed a discovery violation, because the Supreme Court's decision in *Divito II* conclusively established that it had not done so. The state is mistaken. The Supreme Court decided only that the trial court had erred in finding a violation based on "the failure of the police to include certain information in the reports that they had submitted to the district attorney's office." *Divito II,* 330 Or at 327. The court did not reach the question of whether the state had committed a discovery violation by reason of the prosecutor's failure "to disclose a police officer's notes that were under the prosecutor's control and that pertained to defendant's guilt or innocence." *Id.* at 330 (Durham, J., concurring). Inextricably bound in that question is the issue of whether this court correctly determined in *Divito I* that Moore's notes were not "relevant" to defendant's prosecution, within the meaning of ORS 135.815(1), until the prosecutor learned of Dean's identity and decided to call him as a witness. As noted, the Supreme Court expressly declined to reach that issue in *Divito II.* Accordingly, the Supreme Court's decision did not conclusively determine that the state had not committed the discovery violation found by the trial court on remand.

The analytical path we have followed thus leads once more to the decisive question in *Divito I,* namely, whether "relevant" statements within the meaning of ORS 135.815(1) (1997) are statements pertaining to testimony that the district attorney intends to elicit from a witness at

trial. *Divito I*, 152 Or App at 679-80. This court has already decided that question once. The opinions of Judge Edmonds for the majority and Judge Armstrong for the dissenting judges more than adequately framed the matter for what appears to be inevitable further review by the Supreme Court. For the reasons stated there, we adhere to our former decision in *Divito I*, and we conclude that the trial court erred in determining that the state committed a discovery violation in failing earlier to disclose Moore's notes to defendant. Our conclusion obviates any need to consider the state's final argument that the trial court erred in ordering Dean's exclusion as a witness as a sanction.

Reversed and remanded.