(342 Or 645)

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES ANTHONY JOHNSON,
*Appellant.*

## 02C-54316; A122706

152 P3d 962

Erin Galli Rohr and Chilton, Ebbett & Rohr filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

**WOLLHEIM, J.**

Defendant appeals from a judgment of conviction for two counts of robbery in the second degree, ORS 164.405. He assigns error to the trial court's denial of his motion for a judgment of acquittal based on insufficiency of the evidence and the court's denial of his motion for a recess to review the investigating police officer's notes. Because we agree that the trial court erred in denying his motion for a recess, we vacate the judgment and remand to the trial court for further proceedings.

The evidence viewed in the light most favorable to the state supports these facts: During the evening of December 8, 2002, the doorbell rang at the Givens's residence while Givens, his daughter Clark, and his granddaughter Bradd, were inside. Bradd opened the door and five men, including defendant, stepped inside. Givens testified that defendant asked for Givens's wife, who was not home at the time, and said that Givens's wife had "used his [girlfriend's] daughter to steal some stuff from one of his neighboring houses * * * and [defendant] had come to get it back." Clark testified that defendant stated that he was there to collect $15,000 that was missing from a coat in his neighbor's house. Givens and Clark also testified that while defendant was making those demands, he motioned toward his shirt and said "he had a gun and he was ready to pop caps off." During the confrontation, Clark and Bradd managed to run to a neighboring home to call 9-1-1. Shortly thereafter, the police arrived. Defendant attempted to flee from the police, but the police apprehended and arrested him. After his arrest, he gave the officers inconsistent statements regarding the incident, but eventually told them that there was "money involved."

Defendant's testimony at trial regarding the events of December 8, 2002, was somewhat different from the state's evidence. He contends that, on that night, he was at home with his girlfriend when a friend, Villegas, stopped by and "start[ed] to talk to [him] about some recent events that was happening down at his place." Defendant, his girlfriend, and Villegas went to the Givens's residence to locate defendant's girlfriend's daughter. Defendant testified that, once inside,

he told the victims that "[his girlfriend's daughter] took some money from us and I think she's with [Givens's wife]." Defendant testified that he told them the amount of the missing money was $1,500, as opposed to $15,000 that the victims testified that he demanded. He also testified that the $1,500 was his girlfriend's rent money. Defendant denied threatening the victims or indicating to them that he had a gun.

Defendant was charged with robbery in the second degree. At trial, the state called Mayberry, the police officer who responded to the 9-1-1 call. Using the police report to refresh his recollection, Mayberry testified to Clark's statements at the scene. Mayberry also testified that he authored the police report using notes that he took at the scene and his independent recollection of the incident. On cross-examination of Mayberry, defense counsel questioned:

"[DEFENSE COUNSEL]: [Y]ou indicated there was some notes that you used to prepare your police report.

"[OFFICER MAYBERRY]: Yes.

"[DEFENSE COUNSEL]: Okay. Do you have those notes with you?

"[OFFICER MAYBERRY]: No.

"[DEFENSE COUNSEL]: Do those notes exist today?

"[OFFICER MAYBERRY]: Yes.

"[DEFENSE COUNSEL]: Where are those notes?

"[OFFICER MAYBERRY]: In my locker."

Defense counsel then moved for a mistrial on the ground that he had requested such notes in a detailed discovery request and that the state had failed to provide them. The state opposed the motion, stating:

"Your Honor, those are not in the possession of the State. We never ask those from the officers. And everything in his notes, which I asked the officer on the stand, has been memorialized in this police report. There's no need for those. Nothing's different than what the officer testified about in his report."

The court denied defendant's motion for a mistrial. Defendant then moved for a recess to allow the officer to

obtain his notes and to allow defendant to review them. Based on the district attorney's statement, the court denied defendant's motion.

At the close of the state's case, defendant moved for a judgment of acquittal on the ground that the evidence was insufficient to support a conviction for robbery in the second degree. The trial court denied the motion and convicted defendant of two counts of robbery in the second degree.

■ On appeal, defendant raises two assignments of error. In his first assignment, he asserts that the trial court erred in denying his motion for a judgment of acquittal. In his second assignment of error, he contends that the court erred in denying his motion for a recess to allow him to obtain and review Mayberry's notes. We start with the first assignment.

■ We review the denial of a motion for a judgment of acquittal "solely to determine whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Rose*, 311 Or 274, 281, 810 P2d 839 (1991).

ORS 164.405 provides, in part:

"(1)   A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"(a)   Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon[.]"

ORS 164.395 provides, in part:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"* * * * *

"(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

To convict defendant of robbery in the second degree, the state had to establish that: (1) defendant was committing theft or attempting to commit theft, (2) while committing theft or attempting to commit theft, defendant threatened the immediate use of physical force upon the victims with the intent of compelling the owner of property, or another person, to deliver the property, and (3) defendant represented by words or conduct that he was armed with a deadly weapon to effectuate his intent. ORS 164.395; ORS 164.405.

Defendant contends that the state failed to establish the first element, namely that he was "attempting to commit theft."[1] Defendant's contention is based on his defense that he acted under an honest claim of right because he reasonably believed that he was entitled to recover the money. ORS 164.035 provides, in part:

"(1) In a prosecution for theft it is a defense that the defendant acted under an *honest claim of right*, in that:

"* * * * *

"(b) The defendant *reasonably believed* that the defendant was entitled to the property involved or had a right to acquire or dispose of it as the defendant did."

(Emphasis added.) Once he raised that defense, the state had the burden to disprove it beyond a reasonable doubt. ORS 161.055(1).[2] Defendant contends that he was entitled to a judgment of acquittal because the state did not meet its burden of disproving his defense.

Defendant argues that the evidence at trial showed that "[he] never requested anything from [the victims] other than the money that he believed had been taken from [his

---

[1] ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

[2] ORS 161.055(1) provides:

"When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at trial, the state has the burden of disproving the defense beyond a reasonable doubt."

girlfriend's daughter]" and that he reasonably believed that he was entitled to that money.

We start by noting that ORS 161.055(1) places the burden of disproving a defense on the state only when the defense is "raised at trial." Here, defendant moved for a judgment of acquittal after the close of the state's evidence, but before defendant presented his case. At that time, he had not yet "raised" his defense, so the state had not acquired the burden of disproving it. *See* ORS 161.055(3).[3] However, even if the burden of disproving the defense had existed at that time, there was sufficient evidence for a reasonable factfinder to have found that defendant did not believe that he was acting under a claim of right when he demanded money from the victims.

First, the evidence was sufficient to establish that defendant did not have an *actual* claim of right to the money. Defendant's own testimony indicated that the money he demanded belonged to his girlfriend, and not to defendant. There was also evidence that the money may have belonged to one of defendant's neighbors, and not to defendant.

Second, viewing the evidence at trial in the light most favorable to the state, we also conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not have a reasonable belief that he had a right to the money he demanded. There was evidence that defendant entered the Givens's residence at night and with four other men to demand the money. He attempted to flee when the police arrived. He told inconsistent stories to the police regarding the incident, and then reluctantly admitted to the officers that there was "money involved." Given that evidence, a factfinder could conclude that defendant could not reasonably have believed that he was entitled to the money he demanded. The trial court did not err in denying defendant's motion for a judgment of acquittal.

---

[3] ORS 161.055(3) provides:

"The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

■    We turn to defendant's second assignment, that the trial court erred in denying his motion for a recess to allow him to review Mayberry's notes.

Before we can determine whether the trial court erred in that regard, we must first determine whether the notes that defendant argues he is entitled to are subject to discovery because, if the notes are not subject to discovery, that ends our inquiry.

ORS 135.815(1) governs reciprocal discovery in criminal cases; it provides, in part:

> "Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to a represented defendant the following material and information within the possession or control of the district attorney:
>
> "(a)   The names and addresses of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant *written or recorded statements or memoranda of any oral statements of such persons.*"

(Emphasis added.)

■■    The existence of a discovery violation is a question of law. *State v. Lindquist*, 141 Or App 84, 88, 917 P2d 510 (1996). The rules governing reciprocal discovery are statutory. Accordingly, the state has to provide material and information to the defense only if that material falls within the statutory directive. *State v. Divito*, 330 Or 319, 326, 5 P3d 1103 (2000).

Here, the notes are considered to be within the district attorney's control even though the notes are in Mayberry's possession. *See State v. Warren*, 304 Or 428, 433, 746 P2d 711 (1987) (explaining that the police are considered a part of the prosecution for the purposes of the discovery statute). Accordingly, determining whether Mayberry's notes are subject to discovery hinges on whether the notes constitute "relevant written or recorded statements" of a witness within the meaning of ORS 135.815(1)(a). If the notes are "relevant written or recorded statements," then ORS 135.815(1) requires that the state provide them to defendant. But, if the notes are fragmentary and "merely steps in the

preparation of a statement," the state is not statutorily required to provide them. *State v. Morrison*, 33 Or App 9, 12, 575 P2d 988 (1978). *See also State v. Bray*, 31 Or App 47, 50, 569 P2d 688 (1977).

In *State v. Divito*, 152 Or App 672, 955 P2d 327 (1998), *aff'd*, 330 Or 319, 5 P3d 1103 (2000),[4] we addressed a similar question regarding whether a police officer's notes were "relevant written statements" pursuant to ORS 135.815(1)(a). An officer responding to the scene of an automobile accident arrested the defendant for DUII. *Id.* at 674-75. The officer then went to a nearby video store and spoke with the store manager, Dean. Dean told the officer that a man had come into the video store and had asked Dean to call 9-1-1 to report an accident. The officer made notes of his conversation with Dean; however, the final police report that the state provided to the defendant did not contain Dean's name or address, nor did it disclose the information that Dean had given the officer. *Id.*

The night before trial, the district attorney telephoned a 9-1-1 supervisor to determine why the police report did not contain any information about the 9-1-1 call. *Id.* at 674. As a result of that call, the state was able to identify Dean and serve him with a subpoena to appear at trial the following day. *Id.* at 674. After the subpoena was served, the district attorney left a phone message notifying defense counsel that Dean would appear as a witness the following day. At a pretrial hearing, the court found that the state's failure to provide the defense information from the officer's notes regarding Dean was a discovery violation and excluded Dean's testimony as a sanction for that violation. *Id.* at 675-76. The state appealed.

_____

[4] For clarity, we briefly describe the procedural history of *Divito*. In the state's initial appeal, *State v. Divito*, 152 Or App 672, 955 P2d 327 (1998), we reversed the trial court's finding of a discovery violation. The Supreme Court affirmed our decision on different grounds, without expressing an opinion as to the rationale in our first opinion. *State v. Divito*, 330 Or 319, 5 P3d 1103 (2000). On remand to the trial court for further proceedings, the trial court again found a discovery violation. In the state's second appeal, *State v. Divito*, 180 Or App 156, 42 P3d 918, *rev den*, 334 Or 288 (2002), we adhered to our original rationale and concluded that the trial court erred.

On appeal, this court interpreted the meaning of "relevant statements" in ORS 135.815(1) and concluded that "an officer's notes become 'relevant statements' within the meaning of [ORS 135.815(1)] when they can be used for purposes of impeachment," that is, when they are "relevant to some witness' testimony." *Divito*, 152 Or App at 683. Based on that conclusion, we held that the officer's notes were "not relevant to his testimony because the state did not intend to offer evidence about [the statement made to Dean] until it discovered the existence of Dean." *Divito*, 152 Or App at 683.

In this case, defendant argues that, because the trial court allowed Mayberry to testify about one of Clark's statements at the scene of the incident, "[i]t is possible that Clark said more to [the officers] and that those statements would turn out to contradict her testimony at trial." If defendant is correct in that assertion, and the notes contain additional statements made by state witnesses, then the notes could have impeachment value and thus be subject to discovery under ORS 135.815(1).

The state argues that defendant's failure to make an offer of proof regarding the content of Mayberry's notes "mak[es] it impossible for this court to determine whether the trial court's denial of his request for a recess prejudiced him" and therefore we should affirm the trial court's ruling.

We agree that, based on the record before us, it is not possible to determine whether Mayberry's notes are "relevant written or recorded statements." However, in this situation it was not possible for defendant to make an offer of proof as to the content of the notes, when he had been denied an opportunity to review the officer's notes.

Defendant took steps to secure the notes prior to trial. He filed a detailed discovery request that covered Mayberry's notes; he specifically requested "all reports, memoranda, *notes*, and statements intended by the maker to be an account of the events of this case or a declaration of fact, prepared by any police or investigative agency, which relate to the above-entitled case." (Emphasis added.) Defendant did not learn of the existence of the notes until Mayberry testified at trial that he had used the notes to prepare the police report.

The precise correlation between the notes and the final report is not clear. The prosecutor told the trial court that "everything in [the] notes, which I asked the officer on the stand, has been memorialized in this police report." However, Mayberry did not testify that he incorporated all the information from his notes into the report; he testified that he used the notes and his independent recollection to write the report.

When defense counsel learned about the notes, he immediately moved for a mistrial based on a discovery violation. When the trial court denied his motion, defendant then asked for a recess during which the officer could retrieve the notes from a locker and defense counsel could review them.

Under those circumstances, we conclude that defendant should have had an opportunity to review the notes to determine if they could be used to impeach any state witness, and possibly to use the notes to make an offer of proof regarding any purported discovery violation.

To be clear, we do not hold that a police officer's notes are always "relevant statements" under ORS 135.815(1)(a). Nor do we express any opinion on whether a discovery violation would occur if the officer's notes were not produced. We hold merely that, under the circumstances of this case, the trial court erred in denying defendant's motion for a recess to review the notes. Because the trial court did not provide defendant an opportunity to review the notes, we cannot determine whether the notes were subject to discovery and whether a discovery violation occurred.

Judgment vacated; remanded with instructions to afford defendant opportunity to review officer's notes and for a hearing to determine whether state's failure to provide notes to defendant constituted a discovery violation. If the trial court determines that a discovery violation occurred, it shall consider whether new trial is required; otherwise, it shall reinstate previous judgment.