No. 312 April 22, 2026 587

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELIJAH ALLEN WIESE,
*Defendant-Appellant.*

Washington County Circuit Court
21CR16017, 21CR10008; A180109 (Control), A180111

Ricardo J. Menchaca, Judge.

Argued and submitted October 23, 2024.

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Affirmed.

Pagán, J., dissenting.

**POWERS, J.**

In this consolidated criminal case, defendant appeals from judgments of conviction for counts of sexual abuse in the first degree, ORS 163.427, sexual abuse in the third degree, ORS 163.415, and unlawful sexual penetration in the second degree, ORS 163.408, for acts committed against child victims EC and EK.[1] In his first assignment of error, defendant argues that the trial court erred in allowing the state to present a "surprise witness that undercut defendant's theory of the case." In his second and third assignments, defendant asserts that the trial court erred in imposing $5,000 in compensatory fines for both EC and EK. For the reasons explained below, we affirm.

The relevant underlying facts are undisputed. Defendant was charged with several sex crimes for conduct against different victims, including his wife's niece, EC. During defendant's jury trial, EC testified that she disclosed the abuse to her mother in February 2021. She further testified that she had told her cousins during the holidays about two years prior that "I had been touched by" defendant. On cross-examination, EC confirmed that she told her cousins in California and that she had testified before the grand jury that she had told her cousins.

On the second day of trial, following opening statements and EC's testimony, the prosecutor told the court and defendant that the state would like to call EH as a witness who had not been disclosed in discovery. EH was one of the cousins to whom EC had disclosed the abuse. The prosecutor elaborated that, although EC testified at grand jury that she had disclosed the abuse to her cousins, she did not say precisely which cousin or cousins she was referring to. The prosecutor further clarified that he had just discovered that EC had family supporting her in the hallway during the trial and that EH was one of those family members. He explained that he would like to call EH as a witness but that, because the state had not filed a hearsay notice related

_____

[1] ORS 163.427 and ORS 163.408 have both been amended since the underlying conduct in this case. Or Laws 2021, ch 82, § 7; Or Laws 2023, ch 407, § 3. However, because those amendments do not affect our analysis, we refer to the current versions of the statutes in this opinion.

to the statements, he would not ask EH specifically what was said but rather would ask questions to get a sense of the chronology of when that conversation took place.

Defendant objected to the state calling EH as a witness. Defendant first contended that the state was on notice through grand jury that EC had spoken with someone else before talking to her mother, and the state never investigated it. Moreover, although defense counsel acknowledged to the trial court that she knew about EC's grand jury testimony, she argued that EH should be excluded as a witness because "it completely changes many issues with this case, including some of the decisions that, you know, I made regarding calling witnesses, even advising my client about *** what our legal strategy was and some of the legal issues that we were dealing with." Defendant noted that EC did bring up during her direct testimony that she had told a cousin about the abuse, but that defense counsel would have never asked about it otherwise.

The court allowed EH to testify, explaining that, "I'm going to allow the witness so long as you stay away from the hearsay and just go with the chronological subject matter that you spoke of." Immediately following the court's ruling, defendant requested "an opportunity to at least be informed of what her statement is regarding—you know, if [the prosecutor has] talked to her, if the detective has talked to her." The parties discussed other matters, and the court took a recess, which allowed defense counsel and the prosecutor to each speak with EH.

When the trial resumed, defense counsel told the court that EH had been present in the courtroom during opening statements, but that she was not present for EC's testimony. Defense counsel again asked for the witness to be excluded from testifying, arguing that "[t]his is the only piece of corroborating evidence prior to when she made the allegation to her mother, which is a huge issue in this case. And she sat in for our statements and she was—it wasn't elicited by the defense." Defense counsel reiterated that EC testified to having told a cousin about the abuse, and the state was aware of that, but the state never provided discovery or names of any cousins that would have helped inform

the defense trial strategy. The prosecutor acknowledged that EH was in the courtroom for opening statements but not for EC's testimony and again requested that EH be allowed to testify, asserting that, as to any concerns of prejudice, "if that's the case, I mean, if they need more time or something, to do something else, I guess we can explore that option. But my position is that her being in the courtroom during the opening statement doesn't change her testimony."

Emphasizing that the prejudicial effect is "enormous," defense counsel contended that the "whole theory of defense that I've put on so far is that, you know, the family was talking to the girls about inappropriate touching and that's what prompted the disclosure to happen." Further, "had I been informed of a witness that was going to come in and say that actually two years [earlier], that she had disclosed, that would have completely changed all the arguments and the testimony that I've put forth to the jury already." The court asked defense counsel, "Do you [need] more time to follow up with [EH]?" Defense counsel responded, "[Y]eah, I just have one question for her." The trial court explained, "I'm happy to allow you to follow up with her. I'm going to allow her to testify." After defense counsel spoke again with EH, defense counsel told the court that "I might want to call [EC] back to the stand. She's not under defense subpoena, but I imagine that I'll have access to her based on this new evidence."[2] The court agreed. EH then testified that EC spoke with her about "something that bothered her" relating to defendant. EH recalled that the conversation occurred in December of 2019.

Ultimately, defendant was convicted of one count of first-degree sexual abuse for conduct against EK. He was further convicted of six counts of first-degree sexual abuse, one count of second-degree unlawful sexual penetration, and one count of third-degree sexual abuse for acts committed against EC. The court granted the state's motion to dismiss one count of third-degree sexual abuse, and the jury acquitted him of one count of first-degree sexual abuse. At sentencing, the court announced that it would impose two

---

[2] Defendant did not end up calling EC back to the stand to testify despite the trial court's ruling granting permission to do so.

$5,000 compensatory fines for the benefit of both EC and EK. This timely appeal follows.

In his first assignment of error, defendant argues that the trial court erred in allowing EH's testimony.[3] Defendant first contends that the court did not rule on whether there was a discovery violation and did not impose a sanction. Defendant further maintains that, given the prejudice identified at trial, the trial court abused its discretion in applying any remedy short of exclusion. The state remonstrates that the trial court imposed an appropriate sanction and that it did not abuse its discretion in refusing to exclude the witness.

We first note that, although the trial court did not explicitly rule on whether the state committed a discovery violation, the parties do not dispute that the state's failure to notify defendant of its intent to call EH as a witness prior to trial was a discovery violation. Therefore, we review whether the trial court abused its discretion in choosing a sanction for the violation. *State v. Moss*, 147 Or App 658, 663, 938 P2d 215, *rev den*, 325 Or 491 (1997).

Under ORS 135.815(1)(a), a district attorney must disclose to a represented defendant the "names, addresses and telephone numbers of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."[4] If a party commits a discovery violation, the court may order "the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate." ORS 135.865.

---

[3] It is unclear as to which of the trial court's rulings defendant has assigned error. Defendant assigns error to the court allowing the state's motion to allow EH to testify; however, we understand the parties on appeal to be arguing over both the motion to allow the testimony and defendant's motion to exclude the testimony.

[4] ORS 135.815 has been amended since criminal proceedings began in this case. Or Laws 2021, ch 409, § 2. However, because the amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

Here, we understand the trial court's ruling to be that there was a discovery violation, and we disagree with defendant's assertion that the court failed to impose any sanction or remedy, although we acknowledge that the court did not explicitly refer to it as such. In fashioning a sanction for the violation—that is, in addressing the state's request to allow a witness to testify who had not properly been disclosed in advance—the trial court imposed a remedy with three parts. First, the court limited the testimony to non-hearsay and to a discussion about when the conversation between EC and EH occurred. Second, the court allowed defense counsel an opportunity to meet with EH and ask her questions. Third, the court agreed that defendant could recall EC even though she was not under a defense subpoena. In reviewing for an abuse of discretion, if we determine that "the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000).

Defendant contends that any remedy short of exclusion is an abuse of discretion because of the prejudice that resulted.[5] We disagree with defendant's argument. Here, the record does not support the conclusion that exclusion was the only legally permissible remedy, especially given the context, which includes defense counsel's pretrial knowledge that EC had already testified to the grand jury that she had disclosed to her cousins. Although EH's testimony corroborated evidence that EC had disclosed the abuse prior to telling her mother, the evidence that EC had made a prior disclosure was known to defense counsel and thus this is not a situation where the defense trial strategy was built entirely on EC's first disclosure being to her mother in February 2021. Moreover, to the extent that it was not

---

[5] The dissenting opinion goes further and concludes that that three-part remedy was an abuse of discretion because (1) allowing defense counsel an opportunity to meet with EH was an insufficient remedy as a matter of law; (2) limiting EH's testimony to nonhearsay may have increased prejudice; and (3) allowing defendant to recall EC was ineffective. 348 Or App at ___ (slip op at 4-7) (Pagán, J., dissenting). None of those arguments, however, appear grounded in defendant's opening brief and there was no reply brief filed. In any event, as explained below, we conclude that the trial court's remedies were within the range of discretionary options under the circumstances of this case.

known which cousin knew of EC's disclosure, defendant was given the opportunity to interview EH before she testified. Given those circumstances, the court's ruling was within the range of legally permissible options, especially given that its remedy included limiting the scope of the testimony and giving defense counsel time to speak with the witness, and recall another witness. *Cf. State v. Summers*, 277 Or App 412, 419, 371 P3d 1223, *rev den*, 360 Or 465 (2016) (concluding that the trial court did not abuse its discretion in allowing the witness to testify when it limited the testimony to what had previously been disclosed to the defendant and adjourned early to allow defense counsel to meet with the witness). Those remedies were within the range of discretionary options contemplated by ORS 135.865. *See State v. Pilon*, 321 Or App 460, 477, 516 P3d 1181 (2022) (recognizing the breadth of a court's discretion to fashion a remedy under ORS 135.865, and explaining that, in exercising that discretion, courts consider factors including "[t]he amount of prejudice created by a violation, the reasons disclosure was not made, the feasibility of rectifying the prejudice, and other relevant circumstances").[6]

Turning to defendant's second and third assignments of error, defendant argues that the trial court erred in imposing compensatory fines for the benefit of EC and EK.[7] Defendant contends that there is no evidence in the record that either EC or EK suffered monetary losses as a result of defendant's conduct. In response, the state asserts that defendant did not preserve the argument he now makes on appeal and notes that defendant does not ask for plain-error review. We agree with the state's contention that defendant did not preserve his argument.

---

[6] The dissenting opinion concludes that the portion of the remedy allowing defense counsel an opportunity to meet with EH and ask her questions was insufficient as a matter of law. 348 Or App at ___ (slip op at 4-5) (Pagán, J., dissenting). That conclusion, however, appears to run contrary to the plain language of ORS 135.865, which provides a trial court with broad discretion to "enter such other order as it considers appropriate." Moreover, this is not a situation like the one described in *Pilon*, where the trial court abused its discretion by imposing "no remedy" in the face of a prejudicial discovery violation. 321 Or App at 473.

[7] Although both of defendant's assignments of error specifically identify EC—and not EK—the parties' arguments on appeal appear to focus on whether the trial court erred in imposing both compensatory fines. We proceed with a similar understanding.

At sentencing, the court set forth defendant's sentence and then announced, "I am going to grant as a fine $5,000 to [EC] to be taken out of the security posted and an additional 5,000 to [EK] out of the money posted." Defendant objected to the compensatory fines, contending that "the parties weren't asking for a financial obligation to go to anybody." Defendant's objection was thus limited to arguing that the court should not impose the fines because no one had asked for them. Defendant did not make any argument as to the sufficiency of the evidence to support the fines, and neither the state nor the court addressed the sufficiency of the evidence because they did not know that that was an issue for defendant. *See State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011) (observing that one of the purposes of the preservation requirement is to ensure that the opposing party and the trial court were given enough information "to be able to understand the contention and to fairly respond to it"); *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (explaining that "the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed on this issue, for this reason?" (Emphases omitted.)).

Because defendant failed to preserve his argument, our review would be limited to plain-error review. *See generally State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (explaining that the general rule is that "an issue not preserved in the trial court will not be considered on appeal"); ORAP 5.45(1) (allowing discretionary review of "plain" errors). However, defendant has not asked us to review for plain error, and therefore we do not do so. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (explaining that "we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so"). Moreover, even if defendant had asked for plain-error review, we would not exercise our discretion to correct any error because a timely objection by defendant would have provided an opportunity to address and remedy any error.

Affirmed.

**PAGÁN, J.,** dissenting.

In this conceded discovery violation case, the state uncovered a surprise witness after trial had already begun. I agree that the failure to uncover the witness sooner, followed by nevertheless calling that witness, was a discovery violation.[1] But I disagree that the trial court's remedy fell within the range of discretion. The minimum remedy in this case was exclusion of the witness. Thus, I respectfully dissent.[2]

I begin by examining the prejudice of allowing EH to testify, before turning to whether the remedies were within the realm of legally allowable options and addressed the prejudice raised.

*The prejudice of allowing EH to testify was significant.*

"In assessing the proper remedy for a discovery violation, 'prejudice becomes the threshold issue.'" *State v. Johnson*, 347 Or App 708, ___ P3d ___ (2026) (quoting *State v. Pilon*, 321 Or App 460, 466, 516 P3d 1181 (2022)). The prejudice inquiry asks two questions. First, what was the extent of the surprise? *Pilon*, 321 Or App at 473. Second, "[w]hat would the party to whom disclosure should have been made reasonably have done differently to prepare for trial had disclosure occurred?" *Id.* at 474. Here, the prejudice of allowing EH to testify—especially under the circumstances—was great.

The extent of the surprise was considerable. EH's disclosure undercut defendant's core theory: that the children's reports were primed suggestions based on the adults in their lives discussing abuse. Corroboration of a previous disclosure entirely sunk defendant's theory.

As in *Pilon*, I "have no reason to doubt defense counsel's detailed assertions that the [disclosure] required more investigation and could potentially change his trial

───────────

[1] With the caveat expressed in *Pilon*: the discovery violation "is entirely understandable, but no less a discovery violation." *State v. Pilon*, 321 Or App 460, 468, 516 P3d 1181 (2022).

[2] I agree with the majority's discussion of the second and third assignments of error. However, because my analysis of the first error would necessitate remand for retrial, I dissent in full.

strategy." *Id.* at 476. Additionally, I identify two major aspects of trial which likely would have gone differently had EH been disclosed prior to trial.

First, EH's unquestionably prejudicial viewing of the opening statements would not have been allowed. OEC 615 (allowing, as a matter of right, the exclusion of all but a select few kinds of witness); *see State v. Cooper*, 319 Or 162, 165 n 2, 874 P2d 822 (1994) (the purpose of OEC 615 "is to prevent any possibility that the testimony of one witness may be influenced or tainted by what he learned from hearing the testimony of another."). Additionally, she would have been instructed not to discuss the case with other witnesses—such as EC. *Id.* at 165 n 2. I do not suggest that EH intentionally altered or changed her testimony in reaction to what she heard or might have discussed with EC.[3] But by knowing what each side considered important, EH might have been subtly influenced in giving her testimony in her well-meaning attempt to support her cousin. That must be weighed in determining the prejudice of allowing her to testify.

Second, the defense would have incorporated EH's disclosure into the trial strategy—which is a complex and multifaceted undertaking. Had EH been disclosed prior to trial, I expect that a competent attorney would have ensured that a defense investigator met with and interviewed her. The attorney would then bring that interview to the attention of any defense experts. Then, the attorney would have assessed the impact of EH on the case, done any necessary research, and then had a discussion with defendant about the path forward—including whether it was now appropriate to plead guilty rather than go to trial. The attorney would then plan an appropriate cross-examination and factor the early disclosure into their opening statement and their theory of the case. Such a process routinely takes months. Even on an expedited timescale, it could take days to coordinate a

---

[3] EC and EH talked in the hallway during trial. On the stand, EH said that the extent of the conversation had only been about whether she was the cousin that EC had mentioned. But she also admitted that she had given a different answer to defense counsel when they talked earlier. While likely just a misunderstanding, this illustrates the key issue: absent a third-party interview, defense counsel was not in a position to impeach EH without personally taking the stand.

defense interview, solicit feedback from experts, and discuss the matter with defendant. That is not to say that all witnesses require that level of investigation. But abuse cases often lack physical evidence and rely heavily on the testimony of a victim. Here, EH was the only corroboration that EC had disclosed the abuse prior to disclosing to her mother. The inability to do more than a brief interview with EH in the middle of trial greatly stymied an effective defense.

The surprise of EH's disclosure was considerable, and the fundamental shift in trial strategy it required made EH's late disclosure highly prejudicial.

*The remedies as crafted did not address the prejudice.*

A remedy must be appropriately tailored to address the prejudice raised. *Pilon*, 321 Or App at 477. Here, the trial court's remedies failed to appropriately address the prejudice of EH's late disclosure.

The majority argues that the trial court did three things to attempt to cure the violation: (1) limit the scope of testimony to non-hearsay and the timing of the disclosure conversation; (2) give defense counsel a chance to meet with EH; and (3) allow defendant to recall EC without a defense subpoena. Each prong is problematic, and the remedies taken as a whole are insufficient to deal with the prejudice of allowing EH to testify. I start with the second remedy because it impacts the value of the other two remedies.

*The brief meeting with EH was an insufficient remedy as a matter of law.*

Allowing defense counsel a chance to meet with EH is the same as a court order "to permit inspection of the material." *Id.* at 468. As the court expressed in *Pilon*, that sort of examination is intended only for pretrial discovery disputes. *Id.* By contrast, "for morning of trial disclosures, ORS 135.865 contemplates other remedies, ranging from continuance, refusing to permit the witness to testify, or evidence exclusion, or 'such other order' as the court 'considers appropriate.' Choosing among those remedies requires an inquiry into prejudice." *Id.* at 470. Allowing the inspection of the material, *i.e.*, briefly interviewing EH, was below the

range of discretionary outcomes allowable for day-of-trial disclosures. Thus, the second remedy was insufficient as a matter of law.[4] *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (A court exceeds its discretion if the remedy is not within "the range of legally permissible decisions.").

It was also insufficient as a matter of practicality. EH was disclosed on the morning of the second day of trial. After discussion, a mere 12-minute recess was taken for the defense to talk to EH. EH was called to the stand before lunch. Counsel had no time to prepare a thorough cross-examination, procure impeachment material, or otherwise adjust the presentation of their case that morning. I have no doubt that trial counsel did the best with the time they were given. But I imagine that they would have greatly benefitted from time to properly prepare a cross-examination of EH. Twelve minutes was simply not enough time to address a key change to a case that resulted in a 225-month prison sentence.

*The limitation on EH's testimony could not have been fully informed based on the brief conversation.*

Returning to the first remedy, the lack of appropriate preparation means that the proper scope of testimony was ultimately a guess. Had a defense investigator interviewed EH, or had police conducted a forensic interview, the full scope of EH's knowledge could have been ascertained. From there, the proper scope of testimony could have been argued over. But a brief conversation in a courthouse was not a sufficient basis on which to excise a key witness's testimony.

Further, appropriate preparation might have revealed that EH's knowledge was incomplete or contradictory, which would have allowed the defense to impeach her. By limiting her testimony to only a non-hearsay conversation about the timing of the disclosure—with no description of what the disclosure even was—the defense was left with little to work with. Indeed, the state could have suggested that restriction exactly because it knew that EH's testimony

---

[4] Allowing examination of a surprise witness is nevertheless necessary in most instances, but that does not mean it is sufficient to deal with the prejudice raised.

would reveal impeachable contradictions.[5] Far from reducing the prejudice of EH's testimony, this well-intended restriction may have increased the prejudice of it.

Lastly, even if the defense did not need or wish to examine the hearsay testimony, this remedy was already implicated by the rules of evidence. OEC 803(28)(b) (residual hearsay exception requires sufficient pretrial notice). The state's invocation of the residual rule in offering not to discuss hearsay implicitly conceded that it had no other basis on which to offer the hearsay statement of EC's disclosure. *See Star Rentals v. Seeberg Constr.*, 83 Or App 44, 49, 730 P2d 573 (1986) (the residual exception "is to be used rarely and only in situations where the interest of justice require"). Thus, exclusion of the hearsay testimony was already required, and was not an additional remedy.

*Allowing the defense to recall EC was ineffective.*

Given that the defense had not called EC in the first place, and in fact did not end up recalling her, I do not see how this remedy could possibly have addressed the prejudice raised by EH's testimony. Indeed, the defense recalling the victim in a sexual abuse case would only have cemented her testimony in the jury's mind. Allowing the defense to recall EC may have been the right thing to do, or even necessary, but it was not sufficient to address the prejudice of EH's testimony.

To the extent the majority believes that defendant's theory, as stated in opening and closing, was not prejudiced by the late disclosure, I remain committed to acknowledging that good trial lawyers adapt, and that we should not use that theory—which contemplated not having that evidence—as a basis for considering whether the violation caused prejudice. Indeed, the fact that the opening statement and closing did not contemplate that evidence fortifies the conclusion about the violation's prejudicial effect.

---

[5] I recognize that the state was being pragmatic in offering to give only non-hearsay testimony, as the mid-trial disclosure meant that it had not filed a pre-trial hearsay notice regarding EH's testimony. But just because the state was being pragmatic does not mean that it might not have also benefitted from narrowing EH's testimony.

*Conclusion*

In sum, one of the three remedies was insufficient as a matter of law, one was already required, and one was a token gesture at most. Taken together, they did not address the prejudice actually raised by EH's testimony. Given the prejudice identified and the mid-trial nature of the disclosure, the minimum appropriate remedy was exclusion of EH's testimony. *Pilon* establishes that a trial court cannot do nothing in the face of prejudice and must address the prejudice actually raised. 321 Or App at 477. "[R]ights and duties are ephemeral indeed without remedies. Thus, by this standard, the * * * discovery rules must be enforced." *Id.* at 473. If the majority will not ensure a meaningful remedy exists for discovery violations, then the discovery statutes are indeed ephemeral.

I respectfully dissent.